[No. 37594. Department Two. December 2, 1965.]

THE PLUMBING SHOP, INC., *Appellant*, v. GUY A. PITTS
*et al., Respondents.*\*

\*Reported in 408 P.2d 382.

515

*Howard H. Herman* and *Robert J. McKanna*, for appellant.

*Murphy & Merryman*, by *Thomas E. Merryman*, for respondents.

FINLEY, J.—Two aspects of contract law are involved in this appeal: (1) The legal implications, if any, arising from the use of a subcontractor's bid-offer by a general contractor in the submission of an over-all bid, and (2) the role of custom and usage in the proof of implied contracts.

The salient facts of this controversy are as follows: The plaintiff, The Plumbing Shop, Inc., a mechanical subcontracting firm, commenced this action for damages for breach of an alleged implied contract with Guy A. Pitts and Mrs. Guy A. Pitts, husband and wife, as general contractors. The plaintiff subcontractor submitted a bid to the defendant general contractor on June 21, 1963, in the amount of $62,-000 for the mechanical work to be done on the government project known as the Priest Lake Ranger Station. The bid was submitted in several sections, inasmuch as the government had not yet determined what portion of the project should be completed during the fiscal year. The "June 21, 1963" bid was confirmed by the plaintiff in a telephone conversation with the defendants on June 23, 1963. The various general contractors' bids were opened on June 24, 1963, and it was determined that the defendant was the low general bidder.

On June 28, 1963, the defendant telephoned the plaintiff and indicated to him that the government was going to award him the general contract for the Priest Lake Ranger

Station. In addition, the defendant requested the plaintiff to prepare for him a cost breakdown and also to order submittal for the job. On July 2, 1963, the defendant general contractor came to the plaintiff's office to discuss pertinent data with respect to prosecution of the mechanical portion of the work. Later that evening, the defendant requested plaintiff's prepared cost breakdown for the mechanical aspects of the project. Subsequently, the plaintiff testified that he turned over his cost breakdown only because he was under the impression that he and the defendant had effected a contractual relationship for the mechanical portion of the Priest Lake Ranger Station project. The defendant thereafter refused to enter into a written contract with the plaintiff to that effect. Plaintiff brought this lawsuit for damages in the amount of $3,486.03, alleging that this sum represented the profit expected, or realizable, had not the defendant breached the contract.

At the conclusion of plaintiff's case, the defendant moved for nonsuit. The trial court granted the motion and entered an order of dismissal. This, principally, was on the theory that the alleged implied contract lacked the legally requisite specificity of terms—and additionally, on the ground that the parties had contemplated the execution of a written agreement.

■ In our review of the trial court's action, we must view the plaintiff's evidence and all reasonable inferences therefrom in the perspective most favorable to the plaintiff. *O'Brien v. Schultz*, 45 Wn.2d 769, 278 P.2d 322 (1954). However, construing plaintiff's evidence in this manner, we nevertheless conclude that the plaintiff's case provided no basis upon which a jury could reasonably find for the plaintiff.

■ The plaintiff here seeks to prove an *implied contract*.[1] In other words, he is simply seeking to prove or to

---

[1] In Shattuck, "Contracts in Washington, 1937–1957," 34 Wash. L. Rev. 24 (1957), the author suggests that legalistic distinctions between express and implied contracts are unsound. "The inference is that words fall into one category, yielding express promises by interpretation, while conduct falls into another, yielding implied promises by implication." In the

imply a promise or set of promises from an act or series of acts on the part of the defendant. We know of no better definition of the term "promise" than the one given in § 2(1) of the Restatement, Contracts (1932):

> A promise is an undertaking, however expressed, either that something shall happen, or that something shall not happen, in the future.

The Washington court has long adhered to the objective manifestation theory in construing the words and acts of alleged contractual parties. We impute to a person an intention corresponding to the reasonable meaning of his words and acts. Unexpressed intentions are nugatory when the problem is to ascertain the legal relations, if any, between two parties. *Washington Shoe Mfg. Co. v. Duke,* 126 Wash. 510, 218 Pac. 232, 37 A.L.R. 611 (1923).

An implied contract, then, has no distinction from an express or written contract in terms of its legal consequences. It simply differs in the mode of its proof. *Milone & Tucci, Inc. v. Bona Fide Builders, Inc.,* 49 Wn.2d 363, 301 P.2d 759 (1956). In the instant case, we have an express offer in the form of an undertaking by the plaintiff "would-be subcontractor" to perform the mechanical portion of the Priest Lake Ranger Station project at a price of $62,000. The issue is whether the conduct of the defendant, reasonably construed, manifested an intent indicative of acceptance of the plaintiff's bid-offer.

---

light of the difficulty of distinguishing the process of interpretation from that of implication, Professor Shattuck suggests that the distinction is without foundation. Since a promise, or an undertaking, that something shall or shall not happen in the future can be expressed by conduct as well as by oral or written communication, the conclusion reached is relatively simple: bury the term "implied contract."

However appealing that solution appears, we do not seize this opportunity to rid ourselves of that troublesome phrase. Instead, we note once again that the types of contract, express and implied, simply differ in the mode of proof and not in terms of their legal consequences. Where the verbal communication which has taken place between the parties is inadequate or totally lacking, legally enforceable relationships may, nevertheless, arise from a reasonable view of the negotiating participants' conduct. The crux of the matter lies in the strength of the proof, and its preponderance respecting promissory intent.

The facts emphasized by the plaintiff-appellant in this regard are: (1) the defendant's telephoning the plaintiff on June 28, 1963, informing him of the general contract award, and (2) the defendant's request for cost breakdown and the ordering of submittal. The plaintiff testified that he would not have prepared the cost breakdown, nor would he have ordered the submittal, if he had not been convinced that he and the defendant had entered into a contract for that portion of the Priest Lake job. In addition, the plaintiff introduced expert testimony to the effect that the applicable custom and usage of trade indicated that general contractors and subcontractors would regard themselves as contractually bound under similar circumstances. Can it reasonably be said that the defendant, by his conduct, had accepted the bid-offer of the plaintiff when he requested, and received, the cost breakdown?

We think not. The plaintiff undertook little or no expense in preparing the cost breakdown, which was nothing more than a written verification of his original bid. The plaintiff had previously submitted similar documents to several general contractors prior to the awarding of the general contract. Furthermore, the ordering of submittal is not necessarily a binding order of materials. In the instant case it appears to have been merely a request to manufacturers to forward brochures containing information and specifications respecting items and materials to be utilized in the construction process. Such procedure normally involves no expense to the firm requesting the information, such as the plaintiff-appellant herein.

More importantly, the record before us is devoid of any evidence of agreement, express or otherwise, to any term of the alleged contract other than the price. Such essentials, as manner of payment, time for completion of the mechanical portion of the work, penalty provisions, bonding, etc., are normally critical to any construction contract. The plaintiff-appellant argues that substantial agreement had been reached on the essential terms, and with respect to such "housekeeping" items, as time of performance, the law

will imply a reasonable time, citing *Stanton v. Dennis*, 64 Wash. 85, 116 Pac. 650 (1911). But our role is not that of contract maker; we merely give legal effect to bargained-for contractual relations. Any prudent *general contractor,* with the attendant responsibility for coordinating all aspects of a project in order to meet the quality and time requirements of the general contract, probably would require a substantial degree of specificity with respect to time of completion of various portions of the mechanical work in order to insure the over-all progress of the project. For that matter, good business practice would dictate that prudent subcontractors (whatever their undertaking) should insist upon precise terms indicating the determinants of, and time for, progress payments and the time for completion of various portions of their undertakings.

■ By the plaintiff's own admission, he and the defendant contemplated embodying their mutual obligations or legal relationship in a written agreement with respect to the entire undertaking. Plaintiff asserts that the case of *Loewi v. Long,* 76 Wash. 480, 136 Pac. 673 (1913), is controlling in instances where a subsequent formal contract is to be executed. Therein, by way of clarification of two earlier decisions (*Stanton v. Dennis,* 64 Wash. 85, 116 Pac. 650 (1911), and *McDonnell v. Coeur d'Alene Lumber Co.,* 56 Wash. 495, 106 Pac. 135 (1910)), was stated that:

> In that case [Stanton], it was held that it was the duty of the plaintiff's assignor to prepare and forward a formal written contract, which was never done. He being in default in this regard, the action could not be maintained. . . . We think the court did not intend to hold in either of those cases that, under no circumstances, could a contractual relation exist by virtue of informal writings when it was provided that a subsequent formal contract was to be executed. To so hold would be not only to go counter to the views expressed by text writers and courts generally, but would place an unreasonable barrier in the way of the facility of business transactions. 76 Wash. 480, 487, 136 Pac. 673, 675.

But the *Loewi* opinion outlines certain prerequisites to the application of the above principle:

> To determine whether or not a contractual relation has been established by informal writings, such as letters and telegrams where the parties have in mind the subsequent signing of a formal written contract, it is necessary to inquire, (a) whether the subject-matter has been agreed upon, (b) *whether the terms are all stated in the informal writings,* and (c) whether the parties intended a binding agreement prior to the time of the signing and delivery of a formal contract. (Italics ours.) 76 Wash. 480, 484, 136 Pac. 673.

Applying the same reasoning to the question of whether a contractual relation existed by virtue of the defendant's conduct in the present controversy, it cannot be said that all the terms of the agreement were settled by the express bid-offer of the plaintiff and the alleged acceptance by way of the defendant's conduct; *i.e.,* his request for a cost breakdown and the ordering of submittal. In the absence of agreement to essential terms, such as bonding, penalty provisions, manner of payment, and work progress completion dates, it can readily be seen that the plaintiff and the defendant must have intended to set out those particulars (and others) in the written contract which was to be executed at a later date.

Section 26 of the Restatement, Contracts (1932), and the comment thereto, are directly in point:

> §26. EXISTENCE OF CONTRACT WHERE WRITTEN MEMORIAL IS CONTEMPLATED.
>
> Mutual manifestations of assent that are in themselves sufficient to make a contract will not be prevented from so operating by the mere fact that the parties also manifest an intention to prepare and adopt a written memorial thereof; but other facts may show that the manifestations are merely preliminary expressions as stated in § 25.
> *Comment:*
> *(a).* Parties who plan to make a final written instrument as the expression of their contract, necessarily discuss the proposed terms of the contract before they enter into it and often, before the final writing is made, agree upon all the terms which they plan to incorporate therein. This

they may do orally or by exchange of several writings. It is possible thus to make a contract to execute subsequently a final writing which shall contain certain provisions. If parties have definitely agreed that they will do so, *and that the final writing shall contain these provisions and no others,* they have then fulfilled all the requisites for the formation of a contract. On the other hand, *if the preliminary agreement is incomplete, it being apparent that the determination of certain details is deferred until the writing is made out;* or if an intention is manifested in any way that legal obligations between the parties shall be deferred until the writing is made, the preliminary negotiations and agreements do not constitute a contract. (Italics ours.)

 Finally, it should be mentioned that plaintiff-appellant asserts that the alleged implied-in-fact contract between it and the defendant general contractor is complete —since custom and the usages of trade may be called upon to fix the time in which the subcontract would be performed and any other terms not agreed upon. In *Milone & Tucci, Inc. v. Bona Fide Builders, Inc.,* 49 Wn.2d 363, 301 P.2d 759 (1956), we stated that the mere use of a subcontractor's bid figures by the general contractor in preparing his bid does not constitute an acceptance of the subcontractor's offer. With respect to the role of custom and usage in implied contract litigation, we stated:

Usage and custom are admissible in evidence to explain the terms of an express or implied contract once the contract is established. The fallacy of the trial court's second theory is that an implied contract cannot *arise* from proof of usage and custom. The effect of custom or usage upon contractual obligations is dependent upon the existence of an actual contract between the parties. Where there is no contract, proof of usage and custom will not make one. (p. 366.)

The above statement is unduly restrictive if it is interpreted to mean that usage and custom are not to be considered where the question before the court is the existence of an implied-in-fact contract. Business practice and custom may be used in the implication process as well as in the interpretation of existing contracts, but its role is not

to fill in all the essential terms of an incomplete agreement. The alleged implied-in-fact contract before us is complete only in one sense: the agreed-upon price. To imply the remaining essentials by way of custom and usage would violate the elementary principle that the court will not make a contract for the parties.

On the basis of the reasons noted herein, we are in accord with the conclusions of the trial court and affirm the order dismissing the plaintiff's case.

ROSELLINI, C. J., WEAVER and HAMILTON, JJ., and BARNETT, J. Pro Tem., concur.