[No. 9351-1-II. Division Two. December 2, 1987.]

BREMERTON CONCRETE PRODUCTS COMPANY, INC., *Respondent*, v. EARL L. MILLER, ET AL, *Appellants*.

*Jane R. Koler, Martin A. Godsil,* and *Casey, Pruzan & Kovarik,* for appellants.

*Anna M. Laurie, J. Larry Paulson,* and *Sanchez, Paulson, Mitchell & Laurie,* for respondent.

ALEXANDER, A.C.J.—Earl Miller appeals a judgment in favor of Bremerton Concrete Products Company, Inc. He argues that contract damages, if any, should have been based on quantum meruit rather than on the unpaid portion of the contract price; that he was entitled to offsets for improper workmanship; that the award of prejudgment interest and attorney fees was improper; and that the lien on his property was invalid. We affirm.

During 1981 and 1982, Bremerton Concrete and Miller negotiated for the sale and purchase of concrete floats for a marina Miller was building in Poulsbo. Miller owned the upland real property and leased the tidelands over which

the marina was located from the State of Washington. On June 25, 1982, the parties signed an agreement for the manufacture and delivery of the floats for a price of $362,000 plus tax. The agreement referred to "exhibits A and B," neither of which was attached to the contract. According to the contract, exhibit A contained plans and specifications for the marina.

Bremerton Concrete began designing and building the floats before the contract was signed. It had preliminary architectural drawings from Miller to help determine the size and quantity of floats. By April 1983, almost 1 year after the contract had been signed, Miller had paid over $300,000 to Bremerton Concrete. After the last floats were delivered, Miller refused to make any more of the scheduled payments and, consequently, held back more than the 10 percent provided for in the signed agreement.

Bremerton Concrete filed a lien on Miller's property and, pursuant to RCW 60.04.010, in December of 1983 filed suit to foreclose the lien. All parties with a subordinate interest to Bremerton Concrete were joined in the suit. Miller denied the contract arguing it was indefinite. He also counterclaimed for loss of rental, damage to a door, negligence, breach of contract, and breach of warranty.

The case was heard by the court. During preliminary motions on the first day of trial, the court granted Bremerton Concrete's motion to amend its lien claim to include the legal description of Miller's leasehold interest in the tidelands area.

During trial, Miller claimed many defects in the floats, the major defect being that 125 breakwater floats were too low in the water which, in turn, immersed the electrical and plumbing lines and wooden walers.[1] He contended that the agreement between the parties was for a freeboard measurement of 18 inches plus or minus 1 inch while Bremerton Concrete contended that because no freeboard agreement

---

[1]According to the parties, a waler is a wooden plank which connects the floats and is held together by rods.

existed, it built the floats according to the industry standard freeboard measurement. Miller also claimed that 40 of the floats had substantial cracks.

At the conclusion of the trial, the court ordered foreclosure of the lien on the upland as well as on the leasehold interest in the tidelands and awarded judgment for Bremerton Concrete in the amount of $153,833.42, plus prejudgment interest and attorney fees. No offset was awarded for Miller's counterclaim for damages for negligence, breach of contract, and breach of warranty, because the court held that Miller had not met his burden of proof.

Miller first argues that the signed agreement between the parties fails for indefiniteness because exhibit A, the plans and specifications, was not attached to the contract. We disagree.

An express contract is one that sets forth the names of the parties to the agreement, the time and manner of performance, the matters agreed to, the price, and the signatures of both parties. *Cahn v. Foster & Marshall, Inc.,* 33 Wn. App. 838, 658 P.2d 42, *review denied,* 99 Wn.2d 1012 (1983); *see also Eaton v. Engelcke Mfg., Inc.,* 37 Wn. App. 677, 681 P.2d 1312 (1984). The signed contract met these requirements. It contained the names of Miller and Bremerton Concrete, the time and manner of performance, the matters agreed to (Bremerton Concrete would build floats for Miller's marina in exchange for $362,000), and the signatures of both parties. The contract constituted the binding agreement between the parties.[2]

▮ The trial court properly supplemented the contract with industry standards for the freeboard measurement on the breakwater floats. Several experts testified that the standard freeboard measurement in the Pacific Northwest

___

[2]Even if the contract between the parties is considered incomplete because of the failure to specify the size, number, and configuration of the floats, in our judgment the contract became binding upon Miller's acceptance of the floats. *See Washington Chocolate Co. v. Canterbury Candy Makers, Inc.,* 18 Wn.2d 79, 138 P.2d 195 (1943); *Snohomish Cy. PUD 1 v. Broadview Television Co.,* 91 Wn.2d 3, 586 P.2d 851 (1978).

is 12 inches plus or minus 1 inch, and if no measurement is specified in the plans, that is the proper industry standard to be used. The trial court found that the parties had not agreed to the freeboard measurement and that industry standards were, therefore, used to supplement the contract. This finding is supported by substantial evidence.

Furthermore, the finding supports the conclusion that industry standards appropriately supplemented the contract. Once a contract is established, custom and usage are admissible to explain its terms. *Plumbing Shop, Inc. v. Pitts,* 67 Wn.2d 514, 521, 408 P.2d 382 (1965). There, the court said, "Business practice and custom may be used in the implication process as well as in the interpretation of existing contracts, . . ."

█ Similarly, this court can affirm on any ground within the proof before the trial court. *Shurgard Mini–Storage v. Department of Rev.,* 40 Wn. App. 721, 723, 700 P.2d 1176 (1985). Under the Uniform Commercial Code, usage of trade may be used to interpret the terms of a contract that is not on its face ambiguous. *Morgan v. Stokely–Van Camp, Inc.,* 34 Wn. App. 801, 663 P.2d 1384 (1983). A usage of trade need not have any relationship to either party or to the contract involved in the dispute. *Morgan,* 34 Wn. App. at 809. We therefore reject Miller's argument that industry standards are not binding if a party is unaware of them. It was appropriate for the court to supplement the already established contract with the standards of the industry for the breakwater freeboard measurement.

Miller next argues that the court erred in not awarding him damages for negligent workmanship, breach of warranty, and breach of merchantability. Again we disagree. The trial court found that Miller had not met his burden of proof on these issues. A review of the record reveals that while Miller provided a list of defects he believed to be present, he failed to show proximate cause or damage. As discussed above, the freeboard measurement was appropriate in light of industry standards. Thus, Miller's damage

claim for insufficient freeboard was properly denied. Similarly, Miller contends that the marina is devalued because the walers touch the water and have deteriorated and weakened. However, three experts testified that the chemical treatment of the walers was effective and that there was no evidence of weakened walers. In fact, Miller's expert testified that the wood in the walers was treated appropriately and that there was no major loss of mechanical integrity to the wood. Miller also contended that because the walers were in the water, the electrical and plumbing utilities that hang beneath the walers were immersed and, consequently, damaged. Several experts testified that electrical conduit can be underwater, and that the requirements for installation of conduit are the same for underwater conditions as they are for damp conditions (within 2 feet of the water). Thus, Miller failed to show damage or causation.

Finally, Miller claimed that he was damaged because several of the floats had developed substantial cracks which he contended were a result of improper manufacturing. However, no expert testified that the cracks were caused by improper manufacturing. Instead, most of the expert witnesses testified that the problems could have been a result of improper installation of the floats or from stress caused by improperly installed pilings. Furthermore, no expert testified that the cracks caused the floats to fail or that the floats were structurally unsound because of those cracks. Two experts testified that the floats were above accepted standards in the industry and were of generally good quality. The trial court did not err in denying Miller's counterclaims. An appellate court will not disturb findings of fact if they are supported by substantial evidence. *In re Marriage of Smith*, 100 Wn.2d 319, 324, 669 P.2d 448 (1983). The trial court's findings are supported by the record and, thus, there was no error.

The trial court also properly awarded attorney fees to Bremerton Concrete. Attorney fees may be awarded on the basis of a contract provision, statute, or recognized ground of equity. *Dauphin v. Smith*, 42 Wn. App. 491, 494,

713 P.2d 116 (1986). An attorney fee provision was included in the signed agreement between the parties. Because Bremerton Concrete was the prevailing party, it was entitled to its reasonable attorney fees. Miller claims that because the court did not make a finding of reasonableness, the award is invalid. We disagree. Because the court ordered an award of reasonable attorney fees, we may infer that the trial court believed it was awarding reasonable fees in the final judgment. We find no error.

■ Similarly, the trial court did not err in awarding prejudgment interest. Prejudgment interest will be awarded when the amount claimed is liquidated, or when the amount of an unliquidated claim is for the amount due upon a specific contract for the payment of money. *Prier v. Refrigeration Eng'g Co.*, 74 Wn.2d 25, 442 P.2d 621 (1968). There was an express contract in this case, and the amount due was on that specific contract. The court properly awarded prejudgment interest.

Miller next argues that the trial court erred in allowing Bremerton Concrete to amend its lien claim at the beginning of trial to include the legal description of the tidelands area. RCW 60.04.060 states:

> such claim of lien may be amended in case of action brought to foreclose the same, by order of the court, as pleadings may be, insofar as the interest of third parties shall not be affected by such amendment. . . .

Amendments of mechanics' liens are in the nature of amendments to pleadings. *M.A. Phelps Lumber Co. v. McDonough Mfg. Co.*, 202 F. 445 (9th Cir. 1913). Under CR 15, amendments should be liberally allowed. *Tagliani v. Colwell*, 10 Wn. App. 227, 517 P.2d 207 (1973); CR 15. Here, no third party was injured by the amendment to the lien, nor was there prejudice to the defendant. *See Structurals Northwest, Ltd. v. Fifth & Park Place, Inc.*, 33 Wn. App. 710, 717, 658 P.2d 679 (1983). Bremerton Concrete mistakenly failed to include the tidelands description in its initial lien claim. Miller has shown no prejudice by the amendment. The trial court did not abuse its discretion in per-

mitting the amendment. *Tagliani v. Colwell, supra.*

Miller also argues that the court erred in foreclosing the lien because the statutory definition of structures subject to liens does not specifically include marinas. RCW 60.04.010 provides that

> Every person performing labor upon, furnishing material, . . . to be used in the construction, alteration or repair of any . . . building, *wharf,* bridge, . . . *or any other structure,* . . . has a lien upon the same for the labor performed, . . . material furnished, or equipment supplied by each, . . .

(Italics ours.) RCW 60.04.030 states that the lot, tract, or part, or parcel of land upon which the improvement is made or the property is situated is subject to the lien to the extent of the interest of the person who caused the work to be done.

Miller argues that Bremerton Concrete's lien does not attach to his upland property because the marina is not a fixture. In our judgment, however, a marina is functionally analogous, if not equivalent, to a wharf which is a structure specifically defined as being subject to a mechanics' lien. RCW 60.04.010. A wharf is defined as a structure of wood or stone, sometimes roofed over, built at the shore of a harbor, river, etc., for ships to lie alongside, as during loading or unloading; a pier; dock. *Webster's New World Dictionary* (2d College ed. 1976). *Garrisey v. Westshore Marina Assocs.,* 2 Wn. App. 718, 726, 469 P.2d 590 (1970) defined a floating marina's function as similar to a "dock or pier which is considered an extension of the land." Because RCW 60.04.030 allows a lien to be claimed on the real property on which a wharf is located, and because a marina is considered an extension of the land, Bremerton Concrete appropriately filed a lien on the upland area. *See also* 53 Am. Jur. 2d *Mechanics' Liens* § 59 (1970). Furthermore, even if a marina is not technically a wharf, it certainly falls within the statutory category of "any other structure." Additionally, because the marina extends over the tidelands leased by Miller, it is also a structure on that property and

Bremerton Concrete is entitled to assert a lien on Miller's interest in the tidelands area.[3]

 Bremerton Concrete argues that this appeal is frivolous. We disagree. Although we have affirmed the trial court in all respects, we find that debatable issues are presented, and thus, the appeal is not frivolous. *Streater v. White,* 26 Wn. App. 430, 613 P.2d 187, *review denied,* 94 Wn.2d 1014 (1980).

Pursuant to both the contract and RAP 18.1, Bremerton Concrete is entitled to attorney fees on appeal. However, because there is a substantial question as to the reasonableness of its request, we remand that issue to the trial court for resolution.

Affirmed. Remand for attorney fee determination.

PETRICH and WORSWICK, JJ., concur.

---

[3]Miller's reliance on *Kinskie v. Capstin,* 44 Wn. App. 462, 722 P.2d 876 (1986) is misplaced. That case only requires that necessary parties be included in a foreclosure action. Because Bremerton Concrete can only lien Miller's leasehold interest in the tidelands, and can lien no interest of the State, the State is not a necessary party.