[No. 10140–8–II.   Division Two.   March 1, 1988.]

THE CITY OF TACOMA, *Respondent,* v. DENNIS H. SMITH, ET AL, *Appellants.*

*Murray J. Anderson, Melissa A. Cain,* and *Anderson, Anderson & Hiblar,* for appellants.

*Robert J. Backstein, City Attorney,* and *Michael D. Smith* and *Francis H. Chapin, Assistants,* for respondent.

ALEXANDER, A.C.J.—Dennis Smith, d/b/a Crow's Nest Marina, and other marina owners, appeal a summary judgment against them and in favor of the City of Tacoma. On appeal they allege that the trial court erred in concluding

that amounts they received from rentals of small boat "slips" are subject to Tacoma's business and occupation tax (B & O tax). We hold that summary judgment was improper, and reverse.

The City of Tacoma filed a complaint against Dennis Smith, owner of Crow's Nest Marina of Tacoma, for delinquent B & O taxes owing for the period from July 1, 1981 to December 31, 1982. Several other Tacoma marina owners intervened as defendants in October 1985. (All of the marinas will be referred to collectively as marina owners.) The marina owners all contended that the receipts received by them from rentals of small boat slips were funds derived from a lease of real estate and, thus, were exempt from the City's B & O tax. The City moved for summary judgment, claiming that the amounts derived from slip rentals were subject to the tax. It supported its motion with an affidavit from an employee of the City's Tax and License Department that contained the following assertions:

Tacoma levies its B & O tax, pursuant to Tacoma City Code 6.68, on amounts derived by the marina owners from rental of small boat moorage spaces. All of the marina owners operate their businesses in Tacoma, and each provides moorage space to various boat owners who wish to dock their boats at the marinas. The moorage businesses of all of the marina owners are similar, in that the marina owners and renters sign agreements that give the boat owners the right, for their rental payments, to dock their boats in designated locations at the marinas, known as "slips." The amount of rent paid by the boat owners varies, depending upon the size of the boat being moored. The agreements are generally month–to–month arrangements, and they provide that a boat owner's slip location may be changed without the boat owner's permission when it is necessary to facilitate the operation of the marina. The walkways around the slips are open to use by any person in the marina. However, to enter any marina, one must pass through a locked gate. The marina owners supply utilities to the slips and bill the boat owners for this service.

The marina owners did not deny the City's factual assertions. However, they argued that the slip rentals were rentals of real estate, and consequently, were exempt from the B & O tax pursuant to the provisions of Tacoma City Code 6.68.270(i). Without specifying the basis for its ruling, the trial court granted summary judgment in favor of the City. The sole issue for our review is whether summary judgment was appropriate on the evidence presented.

Summary judgment is properly granted if the pleadings, affidavits, depositions, and other materials on file demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). On review, we place ourselves in the position of the trial court and we must, therefore, consider all the facts and inferences therefrom in the light most favorable to the nonmoving party. *Wilson,* 98 Wn.2d at 437. Although evidentiary facts may be undisputed, if reasonable minds could draw different conclusions a motion for summary judgment must be denied. *Fleming v. Stoddard Wendle Motor Co.,* 70 Wn.2d 465, 423 P.2d 926 (1967). Additionally, the trial court may not grant summary judgment, even on undisputed evidence, if that evidence does not supply all the facts necessary to determine the issues. *See Rossiter v. Moore,* 59 Wn.2d 722, 370 P.2d 250 (1962); *Byrne v. Cooper,* 11 Wn. App. 549, 523 P.2d 1216 (1974). In this case the facts are basically undisputed. Nevertheless, we do not believe that they are sufficient to warrant summary judgment.

The City of Tacoma imposes its B & O tax on "the act or privilege of engaging in business activities" within the city. Tacoma City Code 6.68.220. The City concedes that it lacks the authority, under its own Code, to impose its B & O tax on the act of renting or leasing real estate. Subsection 6.68-.270(i) of the City Code exempts from taxation,

> *Amounts derived from the lease, rental or sale of real estate;* provided however, that nothing herein shall be construed to allow a deduction of amounts derived from

engaging in any business wherein a mere license to use or enjoy real property is granted, . . .

(Italics ours.)

■ The City argues first that the small boat slips are not real estate. We disagree with the City. For purposes of determining rights of use and access, tidelands are classified as land. *Harris v. Hylebos Indus., Inc.,* 81 Wn.2d 770, 785–86, 505 P.2d 457 (1973). Instead of being treated as navigable waters, tidelands "have been treated as land." *Harris,* 81 Wn.2d at 786. *See also Bremerton Concrete Prods. Co. v. Miller,* 49 Wn. App. 806, 745 P.2d 1338 (1987). In our judgment, the boat moorage slips with which we are here concerned, being located on and over tidelands, clearly constitute real estate.

The answer to the City's second argument is not as clear, however. The City argues that even if the slips are real estate, the marina owners are granting the boat owners nothing more than a license to use or enjoy the real estate, and, thus, the amounts derived therefrom are not exempt from the City's B & O tax. Tacoma's code does not define the terms "lease" and "license."[1] However, rule 118, promulgated by the City's Department of Tax and License, states:

A *lease* or rental of real property *conveys an estate or interest in a certain designated area of real property with an exclusive right in the lessee of continuous possession against the world,* including the owner, and grants to the lessee the absolute right of control and occupancy during the term of the lease or rental agreement. . . .

(Italics ours.) Under rule 118, it is "presumed that a license to use or enjoy real property is granted in the rental of . . .

---

[1]The City alleges, alternatively, that the business is neither a lease nor a license, but is a bailment. This is not the case. A bailment requires a change of control over the object in question. *Collins v. Boeing Co.,* 4 Wn. App. 705, 711, 483 P.2d 1282, 46 A.L.R.3d 1294 (1971). No such change of control over the boats occurs under the rental agreements involved in this case.

boat moorage."[2] Consequently, under the City's taxing scheme, as buttressed by rule 118, a rental of a boat slip is considered a license only if the grant does not give the lessee exclusive possession or control of a designated portion of the real property. The City maintains that the boat owners did not have exclusive control of the slip because the marina owners reserved the right to move the boats in furtherance of the marina operation. It argues that this fact, viewed in light of the rule 118 presumption, indicates that the moorage agreements were licenses, not leases. We do not agree.

A lease is created if a tenant is granted exclusive possession or control of the parcel or a portion thereof. *McKennon v. Anderson,* 49 Wn.2d 55, 58–59, 298 P.2d 492 (1956). This is the case even if the tenant's possession of the real estate is restricted by reservations. *Barnett v. Lincoln,* 162 Wash. 613, 618, 299 P. 392 (1931). Such reservations can include the right to sell the leased property before the lease is over, *Coates v. Carse,* 96 Wash. 178, 164 P. 760 (1917); and to designate from time to time the place on the premises to be occupied by the tenant. *See Barnett,* 162 Wash. at 620. On the other hand, a license exists if a person is granted only the authority to do a particular act upon the owner's land. *Barnett,* 162 Wash. at 619.

Like the State's tax code (RCW 82.04.050), the City's own ordinances prohibit the taxing of leases on real estate, and the Department of Tax and License may not tax more broadly than the ordinance it purports to implement. *See Duncan Crane Serv., Inc. v. Department of Rev.,* 44 Wn. App. 684, 688, 723 P.2d 480 (1986). Therefore, it cannot rely solely on the presumption set forth in rule 118 that boat moorages are licenses. It must present evidence to support that conclusion. The only evidence it has presented

---

[2] Rule 118 apparently was revised in 1984 to provide this presumption. Rule 118 would not have any application to Crow's Nest Marina because Tacoma assessed the tax against that marina for the years 1981 and 1982. However, the remainder of the marinas intervened in 1985, and thus the rule may apply to them, depending upon the time periods involved.

is the provision for the changing of slips if necessary to facilitate the operation of the marina. This is not enough.

With the exception of the Tacoma Yacht Club agreement (which is based on membership), all of the documents signed by the boat owners employed the terms "lease," "lessee," or "sublease . . ." The tenancies were for fixed periods and could not be terminated without written notice. Each boat owner was given possession of a designated slip and was responsible for maintaining it in appropriate fashion. There is nothing in any of the agreements to suggest that while an owner occupied a particular slip, his possession was not exclusive. The mere fact that possession could be changed to another berth does not appear to be enough to turn what would otherwise be a lease into a license.[3] However, there is no evidence in the record regarding the nature or the degree of interference this restriction represented, or the intent of the parties. The determination of whether or not the various written instruments here constitute leases or licenses requires the trial court to consider each instrument in its entirety, together with the circumstances under which it was made and the intentions of the parties. *Conaway v. Time Oil Co.*, 34 Wn.2d 884, 210 P.2d 1012 (1949). Summary judgment is improper where the intent of material provisions in a lease is unclear. *Washington Hydroculture, Inc. v. Payne*, 96 Wn.2d 322, 329, 635 P.2d 138 (1981).

We have just such ambiguities here. The evidence before the trial court, even though undisputed, was insufficient to permit that court to determine as a matter of law that the

---

[3]This is not the first time the City has been told as much. Five years ago, a city hearings examiner construed a similar agreement, also containing a provision for changing slips, and concluded that the moorage rental constituted the lease of real estate. In the Matter of Appeal of Pick's Cove Audit Assessment Notice T–38112 (Oct. 3, 1983). The only significant difference between that case and this one is the existence now, of the presumption in rule 118. If the same situation did not constitute a license then, it cannot be bootstrapped into that status now simply because the Department of Tax and License has presumed it to be so.

agreements constituted licenses rather than leases. Therefore, summary judgment was improper.

Reversed and remanded for further proceedings consistent with this opinion.

PETRICH and WORSWICK, JJ., concur.

Review denied by Supreme Court May 31, 1988.