959 F.2d 243
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, For the Use of Willis R. WALDOW,
Husband, dba: North Clark Construction; &
Esther I. Waldow, Wife, dba: North
Clark Construction, Plaintiffs-Appellees,
v.
STAN PALMER CONSTRUCTION, INC.; Reliance Insurance Co.,
Defendants-Appellants.
 No. 91-35757.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 7, 1992.*
Decided April 13, 1992.
 
 Before JAMES R. BROWNING, EUGENE A. WRIGHT and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Stan Palmer Construction, Inc. (Palmer Construction) and Reliance Insurance Co. appeal the district court's grant of summary judgment in favor of North Clark Construction Co. and Willis and Esther Waldow (referred to hereafter as North Clark). We affirm.
 
 STATEMENT OF THE CASE
 
 3
 In a contract with the United States Department of Agriculture, Palmer Construction was, among other tasks, required to construct an "engineered backfill" at a site in the Gifford Pinchot National Forest near Mt. St. Helens, Washington. North Clark leased and operated a rock quarry which the Government had approved as a source of gravel and "rip rap," large stones used in retaining walls. Palmer Construction contracted to purchase gravel and rip rap from North Clark. The Palmer Construction-North Clark contract called for North Clark to supply loose gravel so that Palmer Construction could complete the "engineered backfill" of "an estimated quantity of 6,300 cubic yards." The contract set the price per cubic yard of material at $5.25 and $5.00, respectively, for two types of gravel to be supplied by North Clark. Also to be supplied was a quantity of rip rap at a designated price per ton.
 
 
 4
 More structural fill material than was estimated in the Palmer Construction-North Clark contract was supplied to the site. Palmer Construction now contends that it is not required to pay North Clark for the excess.
 
 DISCUSSION
 
 5
 The parties dispute the method by which the gravel supplied by North Clark was to be measured. Palmer Construction maintains that the material was to be measured per compacted, in-place cubic yard. North Clark argues that the agreed-upon method of measurement was per cubic yard loaded onto Palmer Construction's trucks.
 
 
 6
 The Washington Supreme Court recently abandoned the plain meaning rule of contract interpretation. Berg v. Hudesman, 115 Wash.2d 657, 801 P.2d 222, 229 (1990). The intent of the parties to a contract may be derived from the entire "context" of the parties' relationship:
 
 
 7
 Determination of the intent of the contracting parties is to be accomplished by viewing the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of the respective interpretations advocated by the parties.
 
 
 8
 801 P.2d at 228 (citation and quotation omitted).
 
 
 9
 No measurement method is explicitly set forth in the Palmer Construction-North Clark contract. That contract merely states that North Clark is to provide "an estimated quantity of ... structural fill material." Certain prices per cubic yard are designated. However, the term "cubic yard" is not defined and it is the meaning of that term that is now in dispute.
 
 
 10
 Palmer Construction argues that the prime contract between the Government, as principal, and Palmer Construction as contractor sets forth the measurement method, and that the term setting forth the method is fully binding upon North Clark. By means of a "flow down" provision included in the boilerplate of the Palmer Construction-North Clark contract, the terms of the "Prime Contract" between Palmer and the Government were incorporated into the subcontract with North Clark. In its entirety, the provision of the Prime Contract relevant to the disputed measurement method reads: "Item No. 6 Includes imported structural fill (engineered backfill) placement and compaction. Measurement and payment is in place embankment after compaction." Palmer Construction argues that this term provides that North Clark's payment was contingent upon the volume of the material supplied by North Clark after it had been compacted by Palmer Construction.
 
 
 11
 We find as a matter of law that this term of the Prime Contract does not provide the measurement method for the subcontract. Rather, the subcontract does. The Prime Contract term does not consider the material provided by North Clark, viz. loose gravel. It bases the Government's payment to Palmer Construction upon Palmer Construction's creation of an "engineered backfill," which is gravel that has been placed and compacted by Palmer Construction. The fact that the Government required Palmer Construction to build an embankment of approximately 6,300 cubic yards of compacted "structural fill" has little bearing on the measurement method to be used to determine the amount of gravel North Clark provided for that job. Palmer Construction's end use of the gravel was of little concern to North Clark.[1] It had agreed to provide sufficient loose gravel to build an embankment of that size. No provisions were made for the method or degree of compaction, nor did North Clark exercise any control over the gravel once it left the quarry, since the gravel was shipped FOB quarry. Moreover, the subcontract language provides: "material to be loaded ... at the pit for a total price of $5.25 per cubic yard." These terms strongly suggest that the measurement was to be at the pit and at the time of loading, rather than after compaction. The Prime Contract provision describes nothing more than the manner and method of payment to Palmer Construction by the Government; it does not govern the manner in which Palmer Construction was to pay North Clark. See Mountain States Constr. Co. v. Tyee Elec., Inc., 43 Wash.App. 542, 718 P.2d 823 (1986).
 
 
 12
 Extrinsic evidence supports North Clark's interpretation of method of measurement under the contract. See Berg v. Hudesman, 801 P.2d at 228. Evidence of usage and custom within an industry is admissible to determine the meaning of contract language. Bremerton Concrete Prods. Co., Inc. v. Miller, 49 Wash.App. 806, 745 P.2d 1338, 1341 (1987) (where contract failed to specify "freeboard measurement" for breakwater floats, standard freeboard measurement for industry was implied); Morgan v. Stokely-Van Camp, Inc., 34 Wash.App. 801, 663 P.2d 1384, 1389 (1983) (applying UCC); Alpine Indus., Inc. v. Gohl, 30 Wash.App. 750, 637 P.2d 998, 1003 (1981). The district court's determination that North Clark's measurement method was known to Palmer Construction and was standard practice in the industry is well supported by the record and we find no contrary evidence which raised a genuine issue of material fact.[2] Therefore, we affirm the district court's summary judgment in favor of North Clark.
 
 
 13
 Finally, the Palmer Construction-North Clark contract provided that Palmer Construction was entitled to attorney's fees in any action brought to enforce the terms of the contract. Under Washington law, this term is fully reciprocal. See Wash.Rev.Code § 4.84.330. We have applied a similar reciprocal fee statute to award attorney's fees to the prevailing party in an action to enforce the terms of a contract brought under the Miller Act. See United States ex rel. Reed v. Callahan, 884 F.2d 1180, 1185-86 (9th Cir.1989), cert. denied, 493 U.S. 1094, 110 S.Ct. 1167, 107 L.Ed.2d 1069 (1990). We remand this matter so that the district court may do so here.
 
 CONCLUSION
 
 14
 We AFFIRM the district court's summary judgment in favor of North Clark and REMAND the action to the district court for a determination of attorneys' fees, including those incurred on appeal.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Indeed, there is some evidence that Palmer Construction used the gravel not just for the embankment but also behind retaining walls; under footings, parking lots, roads, sidewalks, bridge footings and structural slabs; and as leveling course for paved areas
 
 
 [2]
 Stan Palmer himself denies that Waldow ever informed him of the measurement method used by North Clark. However, there is no evidence that Palmer Construction lacked knowledge through its job foremen and through North Clark's invoices and bills which used the measurement method. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986) (nonmoving party must articulate specific facts showing that there is a genuine issue for trial). Moreover, it is noteworthy that Stan Palmer does not say that he told Waldow that measurement would be as compacted in place. He merely points to the contract terms, which do not help him