## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| LONNIE RAY TRAYLOR, | No.  48322-0-II |
| Appellant, | |
| v. | |
| MOST WORSHIPFUL PRINCE HALL GRAND LODGE F & A.M. WASHINGTON AND JURISDICTION and GREGORY D. WRAGGS, SR., Most Worshipful Grand Master, comprised thereof, | UNPUBLISHED OPINION |
| Respondents. | |

WORSWICK, J. — Lonnie Ray Traylor appeals the superior court's summary dismissal of his claims against the Most Worshipful Prince Hall Grand Lodge (Grand Lodge).  Traylor's arguments on appeal are not entirely clear, but are based on his dissatisfaction with the Grand Lodge's decision to suspend his membership and the disciplinary procedures used to decide the suspension.  He appears to claim Grand Lodge violated the Washington Law Against Discrimination (WLAD),[1] denied him Masonic due process during the suspension proceedings, breached a contract to reinstate his membership, and harassed and defamed him.  All of Traylor's claims fail, and we affirm summary judgment dismissal.

---

[1] Ch.  49.60 RCW.

No. 48322-0-II

FACTS

I. THE GRAND LODGE CONSTITUTION AND BYLAWS

The Prince Hall Grand Lodge of Washington is a voluntary nonprofit fraternal association incorporated in Washington, and consisting of exclusively black[2] members. As a condition of membership in the Grand Lodge, a member must agree to abide by the Grand Lodge Constitution and the Grand Lodge Bylaws.

Under the Grand Lodge Constitution, the membership has the ultimate authority over the Grand Lodge's legislative, judicial, and executive decisions. The Grand Lodge Constitution states, in pertinent part:

> This Grand Lodge is the only source of authority and exercises exclusive jurisdiction in all matters pertaining to Ancient Craft Free Masonry within the State of Washington and Jurisdiction; it has supreme, inherent and absolute legislative, judicial and executive Masonic authority and power . . . . It is subject only to the Ancient Landmarks, and from its decisions in relation to them or any Masonic subject there is no appeal.

Clerk's Papers (CP) at 580 (Grand Lodge Const. art. 11).

The Grand Lodge Constitution defines the power of the Grand Master, the Grand Lodge's highest ranking executive officer. The Grand Lodge Constitution provides that "[w]hen the Grand Lodge is not in session," the Grand Master "shall decide all questions of usage, order and Masonic law, . . . and his decisions are final and conclusive, subject to the approval of the Grand Lodge in session." CP at 581 (Grand Lodge Const. art. 13).

---

[2] The Grand Lodge uses the term "black" rather than "African American" because Prince Hall was a Barbadian, not an African American. We respect Grand Lodge's choice of designation and adopt it.

2

No. 48322-0-II

Each July, the Grand Lodge holds the annual communication to elect the Grand Master, to approve or disapprove the Grand Master's actions for the previous year, and to hear appeals by members from "Lodge or Worshipful Master decisions." The Grand Lodge Bylaws reiterate that the membership has ultimate authority over all the Grand Lodge, and sets forth the process for an appeal. Under the Bylaws, "Sections 207.01 through 207.10" govern an appeal from "Worshipful Master decisions." CP at 595. Section 207.01 provides, in pertinent part:

> Appeals shall be submitted to the Grand Lodge for review of judgments, orders, verdicts, decisions or sentences of a lodge in any disciplinary proceedings of the lodge or the rulings or decisions of Masters, . . . and the accused . . . has the right to and may appeal to the Grand Lodge from any judgment, order, verdict, decision or sentence rendered or adjudged by the lodge.

CP at 595 (Grand Lodge Bylaws, Title 207, § 207.01).

II. SUSPENSION

Lonnie Traylor became a Grand Lodge member in 1988. In May 2014, a Masonic trial was held in which Traylor was accused of un-Masonic conduct. A trial commission of Masons, headed by Melvin Lozan, was appointed to hear the case. Traylor became angry and walked out during the trial. The trial commission completed the trial without Traylor and unanimously concluded that Traylor had acted in an un-Masonic manner. The then-sitting Grand Master suspended Traylor's membership.

Traylor appealed his suspension to the Grand Lodge's grievance and appeal committee. The committee reviewed the matter and recommended that Traylor's suspension be upheld, but that the length of the suspension be reduced to a total of four years and six months. In accordance with its procedures, the committee presented its recommendation to the entire Grand

3

No. 48322-0-II

Lodge membership for its vote at the 2014 annual communication. The membership voted to affirm Traylor's suspension. The minutes from the annual communication state in relevant part:

> PGM Troutt #3 moved, that the suspension modification as approved by the Appeal and Grievance Committee and the MWGM actions be sustained on this matter RW Roy Price #83 seconded. *Motion carried.* MWGM Hughes stated that eventually, Brother Traylor #102, name would be put back on the website.

CP at 802 (emphasis added).

After the annual communication, Traylor met with the newly elected Grand Master Gregory Wraggs and asked him to overturn his suspension. Traylor claims that Wraggs agreed to overturn Traylor's suspension and reinstate his membership if Traylor rescinded his appeal to the Grand Lodge. Following their meeting, Traylor prepared a memorandum of understanding agreeing not to pursue legal action if the Grand Lodge would reinstate his membership. Traylor mailed the memorandum to Wraggs, but Wraggs did not sign it and declined to reinstate Traylor.

### III. LAWSUIT

Traylor filed suit against Grand Lodge and Wraggs on November 12, 2014. His pro se complaint is difficult to understand, but the first sentence states, "This action is being brought under Washington Law [A]gainst Discrimination, RCW49.60 et seq." CP at 1. The complaint proceeds to review Traylor's dissatisfaction with his suspension, and argues that the Grand Lodge and Wraggs violated the Masonic code book. Traylor sought full reinstatement to membership, loss of income at $75,000 each year for 10 years, and all properties and assets of Grand Lodge.

On January 26, 2015, Traylor filed a motion for default judgment against Grand Lodge. Grand Lodge filed its answer and the motion for default was denied.

4

Traylor filed a motion for issuance of subpoena duces tecum in an attempt to compel discovery. The superior court denied the motion because Traylor had issued the request for production the day prior. The superior court explained the discovery process and encouraged Traylor to communicate with the Grand Lodge. Traylor also filed a motion for summary judgment. The court denied the motion after determining that Traylor's motion actually sought further discovery.

Grand Lodge filed a motion for summary judgment, arguing that Traylor alleged insufficient facts to support a claim under WLAD, several of Traylor's claims are barred by the statute of limitations, Traylor's breach of contract claim fails for indefiniteness and lack of consideration, and Traylor's suspension was in accordance with the Grand Lodge Constitution. The superior court granted Grand Lodge's motion for summary judgment and dismissed all of Traylor's claims.

ANALYSIS

I. DEFAULT, SANCTION AND DISCOVERY ISSUES

A.      *Motion for Default*

Traylor assigns error to the superior court's denial of his motion for default. However, he provides no further argument or authority and therefore we do not consider it. *Am. Legion Post No. 32 v. City of Walla Walla*, 116 Wn.2d 1, 7, 802 P.2d 784 (1991) ("In the absence of argument and citation to authority, an issue raised on appeal will not be considered."); RAP 10.3(a)(6).

B.      *Sanctions*

Traylor also assigns error to the superior court's failure to sanction Grand Lodge's counsel for not providing requested discovery, filing a "bogus order" to dismiss, not timely responding to Traylor's motion for summary judgment, and not complying with the case order schedule. Br. of Appellant at 1. However, Traylor never requested that the superior court impose sanctions. Generally, we will not consider an issue raised for the first time on appeal. RAP 2.5. Because Traylor did not ask the superior court to impose sanctions, we do not consider this issue.

C.      *Discovery*

Traylor appears to argue that he was improperly denied discovery. However, the superior court never entered any discovery orders. Traylor filed multiple motions in the court regarding discovery,[3] but the transcripts from the hearings on those motions show that the issue was premature and, later, that Grand Lodge had provided discovery. Indeed, at one such hearing the superior court clarified, "You are not asking for me to order him to produce any additional documents," and Traylor responded, "No, sir." Verbatim Report of Proceedings (VRP) (June 5, 2015) at 6.

Traylor's displeasure appears to center on not being provided an audio recording of the Masonic trial or the annual communication. The record reflects that no such Masonic trial recording exists. A recording of the annual communication was provided to Traylor. When Traylor continued to complain that he did not have the annual communication recording, Grand

---

[3] These motions varied from motions for subpoena to motions for summary judgment. At each hearing, the superior court attempted to clarify what Traylor sought and properly instructed the parties on how to proceed.

6

Lodge sent multiple letters explaining that it had been provided, offering to have him listen to their copy, and inquiring as to what the continuing dispute was. The transcript reflects Traylor's position that the audio provided to him was inaccurate, but nothing in the record suggests that other recordings existed and were possessed by Grand Lodge.

Because the trial court made no discovery order, there is no decision for us to review. Traylor's discovery argument fails.

## II. SUMMARY JUDGMENT

A. *Legal Principles*

We review trial court's summary judgment order de novo, performing the same inquiry as the trial court and viewing all facts and reasonable inferences in the light most favorable to the nonmoving party. *Elcon Constr., Inc. v. Eastern Washington University*, 174 Wn.2d 157, 164, 273 P.3d 965 (2012). "A genuine issue of material fact exists where reasonable minds could reach different conclusions." *Michael v. Mosquera-Lacy*, 165 Wn.2d 595, 601, 200 P.3d 695 (2009).

The moving party bears the initial burden of showing there are no genuine issues of material fact. *Pacific Northwest Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 350, 144 P.3d 276 (2006). To establish the existence of a genuine issue of material fact, the nonmoving party may not rely on speculation or argumentative assertions that unresolved factual issues remain; instead, it must set forth specific facts that sufficiently rebut the moving party's contentions. *Michael*, 165 Wn.2d at 601-02. If the nonmoving party fails to meet this burden, summary judgment is appropriate. *Pacific Northwest Shooting Park Ass'n*, 158 Wn.2d at 351.

B.      *Washington Law Against Discrimination*

Traylor contends that this lawsuit is "being brought under Washington Law [A]gainst Discrimination, RCW49.60." Br. of Appellant 14. Because Traylor fails to show a prima facie case, or even allege sufficient facts to support his claim, his claim fails.

The WLAD, chapter 49.60 RCW, under RCW 49.60.010 declares as a civil right the right to be free from discrimination because of race, creed, color, national origin, families with children, sex, marital status, age, or the presence of any sensory, mental, or physical disability, or the use of a trained dog guide or service animal by a disabled person.

Traylor brings his claim under RCW 49.60 generally, and fails to offer any further authority to support his claim. Furthermore, it is unclear how Traylor believes he was discriminated against. Traylor contends that "black on black crime in discrimination happens every day and this is not an exception and the Grand Lodge and its current and past leader is not exempt from this kind of behavior." CP at 460. However, Traylor fails to argue that Grand Lodge's actions were motivated by "black on black" animus. Traylor provides no elucidation as to the basis of his WLAD claim and the record supports none.

C.      *Contract*

Traylor also appears to argue that Wraggs breached a contract with him when he refused to reinstate Traylor's membership. Because no enforceable contract existed, we disagree.

Traylor bases his breach of contract claim on the in-person meeting he had with Wraggs regarding Traylor's suspension. Traylor contends that at the meeting, Wraggs agreed to overturn Traylor's suspension and reinstate his membership if Traylor rescinded his appeal and did not pursue further legal action against the Grand Lodge. Traylor explains that they "both agreed that

we would come up with a memorandum of understanding and he requested that I put it in writing and mail it to his home address." Br. of Appellant 17. Traylor drafted the memorandum of understanding, signed it, and mailed it to Wraggs. Wraggs never signed it and did not reinstate Traylor's membership.

The burden of proving the existence of a valid contract is on the party asserting its existence. *Saluteen-Maschersky v. Countrywide Funding Corp.*, 105 Wn. App. 846, 851, 22 P.3d 804 (2005). For a contract to exist, there must be mutual assent to the agreement's essential terms. *Saluteen-Maschersky*, 105 Wn. App. at 851. "'Mutual assent generally takes the form of an offer and an acceptance.'" *Saluteen-Maschersky*, 105 Wn. App. at 851 (quoting *Pac. Cascade Corp. v. Nimmer*, 25 Wn. App. 552, 556, 608 P.2d 266 (1980)). "An offer consists of a promise to render a stated performance in exchange for a return promise being given." *Nimmer*, 25 Wn. App. at 556.

"A promise is 'a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made.'" *Havens v. C&D Plastics, Inc.*, 124 Wn.2d 158, 172, 876 P.2d 435 (1994) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 2(1)). "But an intention to do a thing is not a promise to do it." *Meissner v. Simpson Timber Co.*, 69 Wn.2d 949, 957, 421 P.2d 674 (1966). Thus, courts should take great care not to construe the conduct or declarations of a party as an offer when it is intended only as preliminary negotiations. *Nimmer*, 25 Wn. App. at 556

An agreement to agree is "'an agreement to do something which requires a further meeting of the minds of the parties and without which it would not be complete.'" *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 175, 94 P.3d 945 (2004) (*quoting Sandeman v.*

*Sayres*, 50 Wn.2d 539, 541-42, 314 P.2d 428 (1957)). Agreements to agree are unenforceable in Washington. *Keystone*, 152 Wn.2d at 176.

Where parties evidence an intent to make a subsequent agreement, that intent is "'strong evidence to show that they do not intend the previous negotiations to amount to any proposal or acceptance.'" *Nimmer*, 25 Wn.2d at 557 (quoting *Coleman v. St. Paul & Tacoma Lumber Co.,* 110 Wash. 259, 272, 188 P. 532 (1920)). In other words,

> "[I]f the preliminary agreement is incomplete, it being apparent that the determination of certain details is deferred until the [subsequent] writing is made out; or if an intention is manifested in any way that legal obligations between the parties shall be deferred until the [subsequent] writing is made, the preliminary negotiations and agreements do not constitute a contract."

*Plumbing Shop, Inc. v. Pitts*, 67 Wn.2d 514, 521, 408 P.2d 382 (1965) (emphasis omitted) (quoting RESTATEMENT OF CONTRACTS § 26, cmt. a (1932)).

In *Pitts*, our Supreme Court considered whether a contract existed between Pitts, a general contractor, and The Plumbing Shop Inc., a subcontractor. *Pitts*, 67 Wn.2d at 515. There, Plumbing Shop submitted a bid to Pitts to complete mechanical work for a government project. *Pitts*, 67 Wn.2d at 515. When Pitts believed the project would be awarded to him, Pitts asked Plumbing Shop to prepare a cost breakdown, and the parties discussed some details over the telephone and in person. *Pitts*, 67 Wn.2d at 515-16. Later, Pitts refused to enter into a written contract with Plumbing Shop. *Pitts*, 67 Wn.2d at 516. Plumbing Shop sued Pitts for breach of contract. *Pitts*, 67 Wn.2d at 516. The court concluded that there was no contract between the parties. *Pitts*, 67 Wn.2d at 520. It based this conclusion on the fact that the parties had not agreed to essential terms such as manner of payment and work progress completion dates. *Pitts*, 67 Wn.2d at 520. "[I]t can readily be seen that [Plumbing Shop] and [Pitts] must have intended

to set out those particulars [or essential terms] in the written contract which was to be executed at a later date." *Pitts*, 67 Wn.2d at 520.

At most it appears that Traylor and Wraggs entered into "an agreement to agree." Traylor admits that following their meeting, they "agreed to come up with a memo of understanding." CP at 3. In his letter to Wraggs following their meeting, Traylor states

> I, Brother Lonnie R. Traylor will agree To Rescind His Appeal, *if and only if*, ALL Issues and Suspensions surrounding The Current and All Previous Cases be Immediately Terminated, and Brother Lonnie R. Traylor be immediately restored to All the Rights and Privileges of his Highest Rank and Style – Right Worshipful.

CP at 33 (emphasis added). The agreement's terms and conditions included statements such as "Wraggs Sr. Agrees to Drop All Charges and Reinstate Brother Lonnie R. Traylor Immediately *upon the Written Signatures* on this Document, *if* Brother Lonnie R. Traylor agrees to 'rescind his Current Appeal to the Grand Lodge.'" CP at 34 (emphasis added). Wraggs never accepted the agreement. Wraggs never signed the memorandum of understanding and never reinstated Traylor's membership. An enforceable contract did not exist, and Traylor's claim fails.

D. *Suspension*

Traylor's lawsuit appears to be mainly focused on his dissatisfaction with the process leading to his suspension from the Grand Lodge. He repeatedly contends that he was not given due process according to Masonic law and seeks full reinstatement to membership. Because Grand Lodge substantially complied with the Masonic code and constitution, Traylor's claim fails.

Under the Fourteenth Amendment, due process requires the opportunity to be heard "'at a meaningful time and in a meaningful manner.'" *Matthews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187,

11

14 L. Ed. 2d 62 (1965)). But due process is protection against *state* action and its relevance in disputes between a voluntary private social club and its members is suspect. *Garvey v. Seattle Tennis Club*, 60 Wn. App. 930, 935, 808 P.2d 1155 (1991) (holding that constitutional due process did not apply to a case of termination from a voluntary association because the plaintiff's claim was of a private and social nature).

Generally, courts refrain from interfering in the internal affairs of voluntary associations. *Anderson v. Enterprise Lodge No. 2*, 80 Wn. App. 41, 46, 906 P.2d 962 (1995). Courts will not interfere with the decision to expel a member "except to ascertain whether the proceedings were regular, in good faith, and not in violation of the laws of the [organization] or the laws of the state." *Grand Aerie, Fraternal Order of Eagles v. Nat'l Bank of Wash.*, 13 Wn.2d 131, 135, 124 P.2d 203 (1942)). While questions of whether a voluntary association has followed its bylaws may sometimes be judicially cognizable, *see Anderson*, 80 Wn. App. at 47, this procedural deficiency exception to the general rule against interference typically is applied with considerable judicial restraint. To require compliance with the minutia of the bylaws would be to interfere with the association's internal operations.

Here, consistent with the Grand Lodge's disciplinary process, Traylor received a Masonic trial. After becoming angry during the trial, Traylor walked out. Traylor was permitted to appeal the trial result to the grievance and appeal committee. Although the record does not contain details of that committee's meeting, the minutes from the annual communication show that the grievance and appeal committee recommended that Traylor's suspension be upheld, but reduced by six months.

Traylor contends that his suspension was not put before a vote of the Grand Lodge's entire membership at the annual communication. However, the record clearly reflects otherwise. The minutes from the annual communication state:

> PGM Troutt #3 moved, that the suspension modification as approved by the Appeal and Grievance Committee and the MWGM actions be sustained on this matter RW Roy Price #83 seconded. *Motion carried.* MWGM Hughes stated that eventually, Brother Traylor #102, name would be put back on the website.

CP at 802 (emphasis added). Additionally, Wraggs and Lozan each signed declarations stating that the Grand Lodge voted to affirm Traylor's suspension. Traylor provides no evidence that the minutes do not reflect what actually occurred. It is possible that Traylor argues the minutes must state "members voted," "a majority voted to uphold the suspension." However, Traylor offers no alternative interpretation of "motion carried."

Traylor also contends that he should have been permitted to address the Grand Lodge members personally and present his evidence to them at the annual communication. However, Traylor provides no authority or evidence that a suspended Mason is entitled to appear before the membership during his appeal. On the contrary, Lozan averred that Traylor's appeal to the Grand Lodge was handled in the same manner as every other appeal.

We hold that the evidence here demonstrates Grand Lodge's substantial compliance with Masonic disciplinary procedures. Given our application of judicial restraint when interpreting a voluntary association's procedures and bylaws, we reject Traylor's claim.

E.      *Harassment*

Traylor also appears to argue that he was subjected to harassment by Grand Lodge. However, he provides no legal or factual authority to support his contention. RAP 10.3(a)(6) requires an appellant's brief to include an argument citing legal authority and the record. Where

13

an appellant fails to cite authority, or where it gives passing treatment to an issue, we do not consider the argument. *See Brownfield v. City of Yakima*, 178 Wn. App. 850, 876, 316 P.3d 520 (2013). Because Traylor fails to discuss the legal basis for his claim and gives the issue merely passing treatment, we do not consider it.

F.     *Defamation*

Traylor also appears to argue that he was defamed by Grand Lodge. However, Traylor does not allege any facts to support a prima facie case of defamation and thus cannot survive summary judgment. Consequently, we reject his claim.

Washington courts recognize that summary judgment plays a particularly important role in defamation cases. This is because "'[s]erious problems regarding the exercise of free speech and free press guaranteed by the First Amendment are raised if unwarranted lawsuits are allowed to proceed to trial. The chilling effect of the pendency of such litigation can itself be sufficient to curtail the exercise of these freedoms.'" *Mark v. Seattle Times*, 96 Wn.2d 473, 485, 635 P.2d 1081 (1981) (quoting *Tait v. KING Broad. Co.*, 1 Wn. App. 250, 255, 460 P.2d 307 (1969)).

Accordingly, to survive a defense motion for summary judgment, the plaintiff has the burden of establishing facts that would raise a genuine issue of fact for the jury as to each element. *Mohr v. Grant*, 153 Wn.2d 812, 822, 108 P.3d 768 (2005). The elements a plaintiff must establish in a defamation case are falsity, an unprivileged communication, fault, and damages. *Mohr*, 153 Wn.2d at 822. Traylor does not make a prima facie case supporting the elements of defamation, and thus his claim fails.

No. 48322-0-II

## ATTORNEY FEES

Grand Lodge requests attorney fees under RAP 18.9, characterizing Traylor's appeal as frivolous. RAP 18.9(a) allows us to order a party who files a frivolous appeal to pay damages. "An appeal is frivolous if it presents no debatable issues on which reasonable minds could differ and is so lacking in merit that there is no possibility of reversal." *Eagle Sys. Inc. v. Emp't Sec. Dep't*, 181 Wn. App. 455, 462, 326 P.3d 764 (2014).

Because Traylor's appeal presented debatable issues upon which reasonable minds might differ on at least one claim, his appeal was not frivolous. Consequently, we affirm the summary judgment dismissal of his claim but do not award attorney fees to Grand Lodge.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Maxa, A.C.J.

_____
Sutton, J.

15