[No. 10324–2–III.   Division Three.   January 22, 1991.]

JAMES D. BURGESON, ET AL, *Appellants,* v. COLUMBIA PRODUCERS, INC., *Respondent.*

*Nels A. Hansen,* for appellants.

*John M. Moberg,* for respondent.

GREEN, C.J.—James D. and Mary Burgeson brought this action against Columbia Producers, Inc., for breach of a farm development lease. Judgment for $1,286.86 was entered for the Burgesons. They appeal. The primary issue is whether the court erred in admitting parol evidence to determine the parties' respective obligations for repairs to underground wells, pumps and pipelines. We reverse.

The Burgesons owned dry land acreage in Adams County. In 1975, 1976 and 1977, they signed separate 10–year development leases for different parcels of land. The lessee, Columbia Producers, agreed to develop a total of 1,045 acres, drill three irrigation wells, and install eight circle irrigation systems. Columbia Producers also agreed to pay the cost of all maintenance and repairs of the wells, mainlines, pumps, motors and irrigation equipment. At the end of each term, the ownership of the wells, pumps and circle irrigation system would revert to the Burgesons in good condition and repair subject only to reasonable wear and tear. In exchange, the Burgesons agreed to accept a token annual rent of $10 per acre.

In 1983 the Burgesons experienced financial difficulty[1] and needed immediate cash. Negotiations between the Burgesons, their attorney and Columbia Producers resulted in a new lease commencing January 1, 1984, and terminating December 31, 1990. However, the new rent was negotiated for 5 years (1986 through 1990) but amortized over 7 years (1984 through 1990). Thus, the annual rent, $75,000, was reduced to $54,500, or approximately $54.50 an acre.

During the fall of 1985, two irrigation wells were not producing the necessary volume of water. To solve the problem, pumps located in the wells, 400 feet beneath the surface, had to be pulled up and inspected. Columbia Producers ordered the work done in January 1986. Mr. Burgeson was not aware of this repair until after the pumps had been pulled. Columbia Producers paid for the repairs, which was set off against the rent due the Burgesons. In late 1987, the mainline between wells 1 and 3 had to be replaced. The testimony indicates Columbia Producers showed Mr. Burgeson the problem and estimated the cost at $9,000; he agreed with Columbia Producers that "whatever has to be done, has to be done." This expense was also set off against rent. Finally, in 1988 repairs were made to the wells, pumps and motors and set off against rent. Columbia Producers set off a total of $79,990.91 against the rent; the Burgesons contest $51,755.99 of that amount.[2]

On March 26, 1987, the Burgesons sued Columbia Producers for breach of the 1984 lease, alleging (1) Columbia Producers failed to obtain the Burgesons' permission to

---

[1] They filed a Chapter 11 proceeding on April 24, 1984. Those proceedings were later dismissed.

[2] The charges contested by the Burgesons as noted in their brief:

| | |
|---|---|
| Redrilling of two wells | $39,954.85 |
| Repair of underground pump bowls | 1,521.27 |
| Replacement of underground main line | 10,279.87 |

repair the wells and replace the mainline, and (2) Columbia Producers improperly made setoffs against rent.

At trial, the court found the lease provisions were ambiguous as to which party was obligated to pay the costs of repair associated with the underground components of the system. The court admitted and relied upon evidence of custom and usage common to a residential setting and concluded the Burgesons must pay for all the expenses associated with the underground components and Columbia Producers for the aboveground components. The court then concluded Columbia Producers had paid the proper rent, either by cash or setoff, except for $1,286.80. Judgment was entered in that amount against Columbia Producers. Finding neither party prevailed, the court declined to award attorney fees. This appeal followed.

The 1984 lease provides:

> *MAINTENANCE AND REPAIRS*: Except as hereinafter provided, *LESSEE shall, at its sole cost and expense, maintain in good condition and repair throughout the term of this lease, all of the said premises, fences and irrigation equipment, and all other improvements;* and, at the termination of this lease, LESSEE shall surrender the said premises and all of the improvements and equipment to the LESSOR in good condition and repair, subject only to the consequences and effect of reasonable wear and tear.
>
> It is understood and agreed by and between the parties that for the years 1984 and 1985, the LESSEE shall pay for all repairs and maintenance. *After 1985, LESSOR shall pay the cost of parts for the repair of all irrigation equipment provided, however,* LESSEE shall pay for all repairs caused by LESSEE or LESSEE'S employee's negligence. In addition, *after 1985, LESSEE shall pay the labor cost of all irrigation equipment repairs.*

(Italics ours.)

■ In *Berg v. Hudesman*, 115 Wn.2d 657, 801 P.2d 222 (1990), the court sets out a new framework to aid in the analysis of contract issues. The court distinguishes between interpretation, a process in which the parties' intent is ascertained through the admission of extrinsic evidence, and construction, a process by which legal consequences are made to follow from the terms of the contract. The former

analysis involves a question of fact; the latter, a question of law. *Berg,* at 663; 3 A. Corbin, *Contracts* § 534 (Supp. 1990).

Here, the parties admit they did not discuss the cost of repairs to the underground components when they signed the 1984 lease. At that time, they had no reason to foresee the necessity for repairs. Thus, there is no evidence as to their intent on this particular issue. As noted in 3 A. Corbin, *Contracts* § 534, at 11–12 (1960):

> When a court is filling gaps in the terms of an agreement, with respect to matters that the parties did not have in contemplation and as to which they had no intention to be expressed, the judicial process should not be called interpretation. . . . The most common sort of "gap" that must be filled is found when, long after the parties have made their agreement, an event occurs that they did not foresee. In determining its legal effect, as the court must, the process may be called "construction"; it should not be called "interpretation."

*See also Ross v. Harding,* 64 Wn.2d 231, 232 n.1, 391 P.2d 526 (1964).

■ However, the contract provides Columbia Producers is responsible for maintaining, "at its sole cost and expense," all of the improvements. An improvement is defined in Black's Law Dictionary 682 (5th ed. 1979) as

> [a] valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes.

The wells, pumps, and buried mainline fit the definition of improvement and Columbia Producers is responsible for the maintenance. This conclusion is supported by the undisputed intent of the parties that ownership of the wells, pumps and mainline would revert to the Burgesons at the end of the lease, in the same manner as would any other improvement to the property.

This construction is also consistent with the circumstances surrounding the execution of the 1984 lease. At that time, the Burgesons were experiencing severe financial difficulty and were not in a position to assume additional

financial obligations. Columbia Producers had assumed liability for all the underground components during the prior development leases. The 1984 lease attempted to maintain that status for 2 years, to 1986, when the Burgesons agreed to begin paying for the cost of parts for the repair of the irrigation equipment. The Burgesons accepted a monthly lease payment higher than the prior leases but well below the market rate and did not guarantee a water supply.

Having determined the underground components of the system are improvements, we also conclude the term "irrigation equipment", in the context of this lease, refers only to the aboveground components. Under the terms of the lease, the Burgesons were obligated to pay for the cost of parts and Columbia Producers to pay the labor costs for repair of irrigation equipment. Consequently, we remand this case for allocation of the repair costs in accordance with this construction of the lease.

The Burgesons contend they are entitled to prejudgment interest and attorney fees. Prejudgment interest is awarded if the claim is liquidated. *Prier v. Refrigeration Eng'g Co.*, 74 Wn.2d 25, 32, 442 P.2d 621 (1968). Since the costs of repair are liquidated, the Burgesons should be awarded prejudgment interest on the amount determined on remand to have been improperly set off against rent. Because the Burgesons have substantially prevailed, they are entitled to recover their reasonable attorney fees at trial and on appeal pursuant to the terms of the lease.

The judgment is reversed and the cause remanded to allocate the repair costs between the parties and to award prejudgment interest, and reasonable attorney fees.

MUNSON and THOMPSON, JJ., concur.

Review denied at 116 Wn.2d 1033 (1991).