[No. 34518-4-I.　Division One.　February 5, 1996.]

ERNST HOME CENTER, INC., *Respondent*, v. JOHN Y. SATO, ET AL., *Appellants*.

474

*Charles E. Watts* and *Oseran, Hahn, Van Valin & Watts, P.S.,* for appellants.

*Roger J. Kindley* and *Ryan, Swanson & Cleveland,* for respondent.

KENNEDY, A.C.J. — Following a bench trial, John Sato and Victor Loehrer[1] (collectively, the landlord) appeal the determination that they breached their lease with Ernst Home Center, Inc. (Ernst), by unreasonably refusing to consent to Ernst assigning its lease of commercial space at Wheaton Mall in East Bremerton to Value Village. The landlord argues that the trial court applied an improper standard in determining whether consent was "unreasonably" withheld, that the tenant's request for consent was premature because no formal assignment was presented to the landlord, that evidentiary errors require reversal, and that the trial court awarded Ernst excessive legal fees and costs. Ernst cross-appeals, arguing that the trial court erred in failing to terminate the lease, in denying prejudgment interest and in denying its request for three additional months of rent abatement as damages for the breach. We conclude that the trial court's only reversible error was the failure to award Ernst prejudgment interest. Accordingly, we affirm the trial court's judgment in favor of Ernst and remand only for the purpose of correcting the judgment to add prejudgment interest. We also award Ernst a reasonable attorney fee for this appeal.

FACTS

In 1975, Ernst and the landlord entered into a 25-year lease for approximately one-third of the space in the Wheaton Mall in East Bremerton. This lease, which expires on November 30, 2000, required Ernst to pay a fixed monthly rent of some $15,000 per month as of the

---

[1]Although the record on appeal does not include an amended complaint naming Mr. Loehrer as a defendant, the trial court's findings of fact and conclusions of law identify him as a party defendant and partner of Mr. Sato in Sylvan Associates, a partnership. Mr. Loehrer is named as an appellant in the notice of appeal.

trial.[2] In 1993, the mall housed two additional "anchor" stores, Safeway and PayLess Drug. The mall also housed other, smaller retailers, including a bakery and restaurant.

The Ernst lease does not require Ernst to continuously occupy the premises, but contains this provision: "Tenant shall not assign this lease nor sublet in excess of 20 percent of the selling area without the written consent of Landlord, which consent shall not be unreasonably withheld." Clerk's Papers at 56; exhibit 16. This lease provision was specifically bargained for. The lease also provides that in the event of a default by the landlord, Ernst shall owe no rent during the period of the default. The lease also provides that the prevailing party in any litigation shall receive all costs associated with the litigation, as well as reasonable attorney fees.

In July 1993, Ernst decided to close its Wheaton Mall store, due to changing economic conditions. On July 14, 1993, Ernst wrote to the landlord, stating that the Wheaton Mall store would be closed, probably in October 1993, and requesting the landlord's consent to an assignment of Ernst's lease to T.V.I., Inc., the corporation which operates Value Village stores. The letter assured the landlord that Ernst would remain liable as surety for all its obligations under the lease.

By return mail, the landlord told Ernst that written approval from Safeway and PayLess to this specific proposed tenant would be necessary, because their leases allowed for substantially reduced rent if a tenant similar to Ernst were not found to occupy Ernst's space. The landlord enclosed a copy of a page from Safeway's lease to illustrate Safeway's rights, and stated that the PayLess lease contained a similar clause. Ernst wrote back denying that the excerpted page from Safeway's lease meant that the consent of Safeway was necessary, and asking again for

---

[2]The lease provides for periodic step-increases in rent. Neither the base rent nor the periodic increases are tied to store income.

the landlord's consent to the assignment.[3] When consent was not promptly forthcoming, Ernst sued, claiming that the landlord had breached the lease by unreasonably withholding consent to the assignment, and asking for money damages and for declaratory relief allowing Ernst to assign the lease to Value Village. Ernst closed the Wheaton Mall store in November and continued to pay the rent.

Prior to trial, the landlord argued that the court should not hear Ernst's case, as Ernst had not presented the landlord with a written assignment agreement with Value Village. The court denied the motion, concluding that it would be a waste of resources to require Ernst and Value Village to reach a formal agreement before knowing that the landlord would consent to the arrangement.

At trial, Ernst presented testimony showing the desirability of Value Village as a tenant. Representatives of Value Village testified that the company was a responsible tenant and in a strong financial position. This would likely continue, as discount retail operations continued to grow in popularity. The representatives also stated that Value Village's advertising would benefit the Wheaton Mall. The landlord did not dispute that Value Village was in an enviable economic position.

Ernst presented a list of cotenant locations showing that Value Village shares mall space with various anchor tenants, including Eagle Hardware, PayLess Drug Stores, Lamonts, Sears, Ernst, Safeway, K-Mart and others in malls similar to this one, in Washington and around the country; and showing that Value Village is itself an anchor tenant in malls similar to this one, in the United

---

[3]Whether Safeway and PayLess had the right to approve or disapprove Ernst's proposed assignment is not an issue on appeal. The record reflects that Ernst got the verbal approval of the regional managers of these two stores to the assignment to Value Village, early in September 1993. In mid-November 1993, the landlord received written notice that Safeway approved of Value Village as a tenant. This was after the lawsuit was filed. We are unclear whether the landlord ever received written notice of consent from PayLess, but the question is academic, for purposes of the appeal, in that we are not required to consider whether Safeway and PayLess had any rights with respect to the assignment.

States and Canada. The court also received evidence that the household income levels found in the various neighborhoods served by Wheaton Mall matched well with the household income levels of Value Village's established customer base.

Ernst called several experts who offered their opinions that Value Village would be an excellent tenant at the Wheaton Mall. Dr. Douglas MacLachlan, the chair of the department of marketing and international business at the University of Washington's school of business administration, studied the demographics of the East Bremerton area and concluded that it was unreasonable for the landlord to have refused to consent to Value Village as a tenant. Dr. Ira Kalish, a nationally recognized expert on the retailing industry and consumer goods distribution, studied nationwide buying trends in relation to Value Village's product. He also concluded that Value Village would be a good fit in the Wheaton Mall. Finally, Steve Austin, a realtor in the Bremerton area, opined that, given the changing commercial leasing market in the area and the various problems of Wheaton Mall, the landlord should have made every effort to attract Value Village and keep it there as long as possible. According to Austin, finding another anchor store to fill Ernst's space would be a very difficult task.

Ernst presented evidence that Value Village would have moved into the Ernst space at Wheaton Mall in November 1993, if the landlord had consented to the assignment.

The landlord countered with evidence of the concerns that the landlord had about leasing to an operation like Value Village. Each of Ernst's expert witnesses agreed, during cross-examination, that a landlord must be concerned with tenant mix, the tone and image of the shopping center, the effect one tenant might have on attracting other tenants, the effect of a given tenant on parking, and the likelihood that a chosen tenant will lead to "cross-

shopping" between that tenant and other stores in the mall. But none of Ernst's experts agreed with the landlord that Value Village would not be a suitable tenant, in view of any of these factors.

The landlord elicited testimony that Value Village deals mainly (90 percent) with secondhand clothing collected by charities and sold to Value Village. Value Village does not clean the clothing it gets, but sorts it by quality, selling the inferior clothes and clothes that do not move off of the retail floor to rag makers or third world countries. After receiving the request from Ernst, the landlord visited two Value Village stores, talked to its own realtor and concluded that Value Village was not a suitable tenant for Wheaton Mall.

The landlord testified that even if Ernst had provided the glowing reports about the financial success of Value Village which the landlord had just heard in the trial testimony, the landlord would not have accepted Value Village as a tenant. In fact, the landlord specifically did not consider Value Village's financial status in making the decision not to approve this proposed assignment.

As of the trial, the Ernst space at Wheaton Mall was still empty. The landlord expressed concern that Safeway's lease was due to expire in 1995 and that Safeway might not renew, a concern that was realistic, according to other witnesses. In addition, PayLess could decide to close its store at Wheaton Mall, because it was building a newer, more modern store about a half-mile away from the mall. Thus, the landlord was facing the possible loss of all three of its anchor stores at Wheaton Mall, and must be particularly concerned with the "tone" of any anchor store brought in to replace any one of its major tenants. Value Village did not possess the "tone" the landlord sought to present at this mall, because of the type of merchandise it sold. The landlord testified that this could negatively affect the landlord's ability to attract suitable

replacements for Safeway and PayLess, if they, too, should decide to leave Wheaton Mall.[4]

The trial court rejected the landlord's offer into evidence of a letter the landlord sent to Ernst, in which the landlord rejected the assignment for some of the same reasons articulated by the landlord during trial.[5]

The trial judge found Ernst's expert witnesses to be particularly credible, and agreed with them that Value Village was an interesting and novel operation, which would attract many customers to Wheaton Mall. The mall needed this kind of draw because it is inconveniently located. Having the Ernst space empty and shut down was much more harmful to the mall than any adverse consequences based on the type of merchandise sold by Value Village. In sum, the trial court found no reasonable basis for the landlord's refusal to consent to the assignment to Value Village.

The court awarded Ernst rent for the months before trial that Value Village would have occupied the space— $77,658.65. The court denied prejudgment interest on this amount. The court denied Ernst's trial request to terminate the lease because of the landlord's breach, but tempered this with a ruling that Ernst's continuing obligation to pay rent under the lease would be conditioned on the landlord consenting to assignment of the lease to Value Village until November 30, 2000, without the conditions the landlord had earlier attempted to impose. Findings, conclusions and judgment were entered on April 18,

---

[4]During trial, the landlord nevertheless proposed to consent to the assignment of the lease to Value Village, on condition that Ernst or Value Village replace the roof of the leased premises, make certain additional improvements and pay the landlord $25,000. This proposal was entered into evidence as trial exhibit 68. The court ruled that the lease did not give the landlord the authority to place conditions of this sort on its consent. We are not asked to review this ruling. Neither are we asked to review the propriety of entering a settlement offer into the evidence at trial.

[5]We treat this issue summarily. The trial court's basis for excluding the letter is unpersuasive; however, the error was harmless, as the same evidence came into the trial, by way of live testimony. Admitting the letter would not have changed the result at trial.

1994. The court indicated its intention to award attorney fees to Ernst as provided in the lease, but continued the issue of the amount to be awarded to a later hearing.

On April 19, 1994, the landlord consented in writing to the assignment, agreeing that Value Village could remain until November 30, 2000, regardless of the outcome on appeal.[6]

Value Village did not open its doors until three months after the entry of the judgment. Ernst continued to pay the rent during this time. As a result, Ernst moved for postjudgment relief consistent with the judgment. Ernst argued that the landlord's breach entitled Ernst to stop making rent payments immediately, as a matter of law. Ernst also argued that the additional three months rent it was required to pay, until Value Village moved into the Wheaton Mall premises, was caused by the landlord's original refusal to consent. The court denied Ernst's motion, agreeing with the landlord that the landlord's consent to the Value Village assignment ended the default, requiring Ernst to resume paying rent in accord with the terms of the lease.

At the subsequent hearing on attorney fees, the landlord argued that the high fee sought by Ernst resulted from Ernst's failure to properly estimate the length of the trial, which resulted in several continuances while the trial judge attended to previously scheduled matters.[7] The landlord asserted that had Ernst properly estimated the length of the trial at the outset, another judge might have heard the case, the continuances would not have been necessary, and the fee would have been lower. The court

---

[6]Ernst does not argue that by so consenting the landlord rendered moot any issues raised in this appeal, perhaps because Ernst may wish to deal with Value Village and this same landlord regarding the assignment of its leases at other, similar malls. For this same reason, and because this appeal raises an issue of first impression with respect to the standard a court should apply in determining the question of unreasonable refusal to consent to a lease assignment, the court elects not to raise the question of mootness, of its own volition.

[7]Trial testimony was taken on January 31 through February 3, 1994; March 29 and 30, 1994; April 11 and 12, 1994.

rejected this argument, awarded attorney fees of $92,859, and awarded costs of $20,432.61. This included all costs, as provided in the lease, not just statutory costs.

This timely appeal and cross-appeal followed.

## DISCUSSION

### Requesting Consent Before Making Formal Assignment

We first address the landlord's contention that Ernst brought its lawsuit prematurely, so that the trial court erred in allowing Ernst to proceed to trial when it had never provided the landlord any formal assignment. The trial court did not err. The lease does not require Ernst to provide a formal document in order to seek consent to a proposed assignment. *Contrast Equity Properties Corp. v. Bonhomme,* 109 Misc. 2d 760, 440 N.Y.S.2d 993 (1981) (lease required 10 days' written notice of assignment). Moreover, the lack of a formal document did not prevent the landlord from evaluating Value Village as a tenant. As the trial court correctly noted, to have dismissed the lawsuit on the eve of trial for any such technical and easily curable deficiency would have been a waste of time and resources, in any event. We affirm the trial court's pretrial ruling refusing to dismiss the complaint.[8]

### Withholding Consent Unreasonably

■ Whether a landlord unreasonably withholds consent to the assignment of a lease is a question of fact. *See Roundup Tavern, Inc. v. Pardini,* 68 Wn.2d 513, 515, 413 P.2d 820 (1966).

---

[8]For these same reasons, we reject the landlord's contention that the trial court erred in rejecting exhibit 64 offered by the landlord to show that Value Village required Ernst to obtain the landlord's approval before negotiating the assignment. The governing document is the lease, which contains no requirement that any particular procedure be followed in seeking the landlord's consent to the assignment. We can readily understand why Value Village would have wanted the landlord's consent before formally committing to the proposed location, but exhibit 64 is irrelevant to the question of whether Ernst failed to follow some procedural requirement contained in the lease. The trial court did not err in rejecting this evidence.

At common law, where a lease clause required a landlord's consent to an assignment by the tenant, but did not contain a specific provision limiting the landlord's discretion to withhold consent, the landlord could arbitrarily and capriciously withhold consent. *See* Restatement (Second) of Property, *Landlord and Tenant*, § 15.2 at 105 (Supp. 1993); Gary L. Hall, Annotation, *Construction and Effect of Provision in Lease that Consent to Subletting or Assignment Will Not Be Arbitrarily or Unreasonably Withheld*, 54 A.L.R.3d 679, § 2[a], at 682 (Supp. 1994). The landlord argues that where a lease restricts the landlord's ability to unreasonably withhold consent, the converse of the common law rule applies, i.e., the landlord may not act arbitrarily and capriciously. Because the trial court did not find that the landlord acted arbitrarily and capriciously, but only that the landlord acted unreasonably, the landlord argues that we should reverse.

Only one Washington court has addressed a similar lease provision. *See Roundup Tavern*, 68 Wn.2d at 515. In *Roundup Tavern*, the landlord refused to allow a retail tenant to assign its lease to a tavern. *Roundup Tavern*, 68 Wn.2d at 514. The trial court found that the landlord unreasonably withheld consent; the only basis for the refusal was that the assignee would be a tavern. The landlord gave no consideration to the financial status of the tavern owners, and the lease contained no use restriction. *Roundup Tavern*, 68 Wn.2d at 515. Without explaining what the "reasonableness" standard entailed, the Supreme Court upheld the trial court's factual findings as supported by substantial evidence. *Roundup Tavern*, 68 Wn.2d at 515. *Cf. Robbins v. Hunts Food & Indus., Inc.*, 64 Wn.2d 289, 297, 391 P.2d 713 (1964) (assignment of contract right in stock purchase agreement; *held*: withholding of consent unreasonable where used as a lever to force favorable contract modifications); *Montgomery Ward & Co. v. Annuity Bd.*, 16 Wn. App. 439, 442-43, 556 P.2d 552 (1976) (landlord cannot unreasonably refuse consent to allow tenant to make improvements; *held*: landlord

refused consent unreasonably as an attempt to force tenant to dismiss a pending lawsuit).

The majority of jurisdictions hold that a lease term preventing a landlord from "unreasonably" withholding consent requires a reviewing court to examine whether a reasonably prudent person in the landlord's position would have withheld consent to the assignment, not whether the landlord acted arbitrarily. *See* Hall, 54 A.L.R.3d 679, § 6, at 689-90 (Supp. 1994); *but see Mitchell's, Inc. v. Nelms*, 454 S.W.2d 809, 814 (1970) (equating "unreasonable," defined as "irrational, foolish, unwise, absurd, silly, preposterous, senseless, and stupid," with "arbitrary," defined as "despotic, tyrannical, bound by no law, and are performed without regard to principles").

We observe that parties to a lease are free to negotiate the standard by which a landlord's failure to consent to an assignment will be considered. To the extent that the terms "unreasonable" and "arbitrary and capricious" may have commonly understood meanings in the commercial leasing industry, we decline to substitute one term for the other.[9] To do so could cause uncertainty with respect to lease provisions negotiated many years ago. Here, the trial court properly applied the reasonableness standard elected by the parties themselves.

We also reject the landlord's contention that the trial judge erred by substituting her own subjective judgment of commercial reasonableness for that of this experienced, sophisticated landlord. It is clear from the record that the trial judge made her decision based on substantial evidence which she found to be ultimately persuasive, and not based on her own, subjective viewpoint.

The landlord also argues that so long as a landlord withholds approval in good faith, that is, not on pretextual grounds and in the exercise of business judgment which the landlord, if no other, views as sound, the inquiry ought to end, for the landlord cannot be said to have acted

---

[9]No evidence on this question was presented at trial.

unreasonably. Here, the landlord showed that Value Village deals in second hand clothing, and occupies a "niche" in the market which "grunge" rock groups (as one example of Value Village's established clientele) find attractive. The experts agreed that "tone" and "image" are appropriate considerations. Why not, then, allow the landlord to have the last word as to the "tone" and "image" desired by this landlord, for this particular strip mall located in East Bremerton?

■ We do not disagree that "tone" and "image" are valid considerations which a landlord may appropriately consider. By their nature, these considerations are somewhat subjective, and we find no evidence that the landlord's stated concerns were pretextual, or made in bad faith. But the "reasonably prudent person in the landlord's position" standard is, in the last analysis, an objective standard. The landlord's ultimate problem, here, was a problem of proof—the landlord was able to articulate appropriate concerns, but not to produce evidence which a trier of fact could examine objectively and from which he or she could conclude objectively that having Value Village as an anchor tenant would in fact be detrimental to this mall. To the contrary, Ernst was able to show conclusively that Value Village coexists happily side-by-side with stores such as Safeway, Ernst, PayLess, Eagle Hardware, Sears and others in strip malls indistinguishable from this one, in the Pacific Northwest and elsewhere in the country. In the final accounting, the landlord was only able to show a personal distaste for Value Village's "niche" in the market, not that Value Village would, more likely than not, adversely affect the "tone" and "image" of this mall. The trial court believed that the greater weight of the evidence was that Value Village would fit very nicely into this mall—and would be a far superior choice to leaving more than a third of the space empty, dark, and unproductive for an indefinite period of time.

The concerns which a landlord can reasonably consider include the financial strength and responsibility of the proposed assignee, the legality of the assignee's intended use for the property, and the nature of the occupancy. *See Maxima Corp. v. Cystic Fibrosis Found.*, 81 Md. App. 602, 568 A.2d 1170, *cert. denied sub nom. 6933 Arlington Dev. v. Maxima Corp.*, 319 Md. 582, 573 A.2d 1337 (1990); *American Book Co. v. Yeshiva Univ. Dev. Found., Inc.*, 59 Misc. 2d 31, 297 N.Y.S.2d 156 (1969); Restatement (Second) of Property, *Landlord and Tenant*, § 15.2 at 112. A landlord may not rely on "considerations of personal taste and convenience." Hall, 54 A.L.R.3d 679, § 6, at 689-90 (1973): Restatement (Second) of Property, *Landlord and Tenant*, § 15.2 at 112 ("As to what constitutes *reasonableness*, most courts look to the standard of the reasonably prudent man, and leave no room for considerations of personal taste and convenience").

The *Roundup Tavern* court, in finding it unreasonable for a landlord to withhold consent merely because of a preference not to lease to a tavern, implicitly utilized the standard of reasonableness adopted in most jurisdictions and by the Restatement. We expressly adopt that position, and hold that where a lease prohibits a landlord from "unreasonably" withholding consent to an assignment by the tenant, the court should evaluate whether a reasonably prudent person in the landlord's position would have refused to consent. In answering this question, the trier of fact may certainly consider any substantial evidence that the landlord may present regarding "tone" and "image," but need not be persuaded in the absence of persuasive evidence showing that the landlord's subjective concerns are also objectively reasonable.

This position best comports with the strong policy against restraints on the alienation of property interests. *See Robroy Land Co., Inc. v. Prather*, 95 Wn.2d 66, 622 P.2d 367 (1980); Restatement (Second) of Property,

*Landlord and Tenant,* § 15.2 at 109 (Supp. 1993). This standard applies to clauses prohibiting a landlord from *unreasonably* withholding consent. Parties to a lease can negotiate for lease terms to which this standard may or may not apply, as they wish. *See* Restatement (Second) of Property, *Landlord and Tenant,* § 15.2 at 106 (Supp. 1993); *Leonard, Street & Deinard v. Marquette Assocs.,* 353 N.W.2d 198 (Minn Ct. App. 1984) (where lease prohibited landlord from withholding consent unreasonably, but listed three specific conditions for proper assignment, landlord did not unreasonably withhold consent where only two conditions met).

■ So long as there is substantial supportive evidence, we cannot substitute our judgment for that of the trier of fact. We affirm the trial court's decision that the landlord unreasonably withheld consent to this assignment because the trial court applied the correct legal standard, and the challenged findings are supported by substantial evidence.[10] *Willener v. Sweeting,* 107 Wn.2d 388, 396, 730 P.2d 45 (1986).[11]

## Prejudgment Interest

Ernst argues in its cross-appeal that the trial court erred in refusing to order the landlord to pay prejudgment interest. At least one Washington court has stated that a trial court's award of prejudgment interest is reviewed for abuse of discretion. *Curtis v. Security Bank,* 69 Wn. App.

---

[10]Substantial evidence is evidence sufficient to persuade a fair-minded person of the truth of the declared premise. *See Ridgeview Properties v. Starbuck,* 96 Wn.2d 716, 719, 638 P.2d 1231 (1982).

[11]The landlord also argues that Ernst failed to provide sufficient information about Value Village to enable the landlord to make a reasoned decision as to whether to approve the assignment. We reject this contention for two reasons: first, the lease does not require Ernst to provide any particular type of information; second, the landlord testified at trial that none of the information presented at trial would have changed the decision not to consent, even if the information had been presented at some earlier time.

12, 20, 847 P.2d 507, *review denied*, 121 Wn.2d 1031 (1993). We need not decide here whether an abuse of discretion or error of law standard applies. Under either standard, the trial court erred by failing to award prejudgment interest.[12]

■ An award of prejudgment interest is proper where the damages resulting from the underlying claim are liquidated. *Public Util. Dist. 1 v. International Ins. Co.*, 124 Wn.2d 789, 810, 881 P.2d 1020 (1994). Damages are liquidated if they are readily determinable and susceptible to exact determination without reliance on opinion or discretion. *PUD 1*, 124 Wn.2d at 810. Prejudgment interest awards rest on the principle that a defendant retaining money which ought to be paid to the plaintiff should pay interest on the money, because the plaintiff loses the "use value" of the money. *Hansen v. Rothaus*, 107 Wn.2d 468, 473, 730 P.2d 662 (1986).

In the instant case, the trial court was not required to rely on opinion or to exercise discretion to determine Ernst's damages—back rent was readily calculated in accord with the fixed-rent terms of the lease and the period of vacancy prior to trial. Ernst's claim was liquidated. The trial court erred in failing to award prejudgment interest. We reverse and remand so that the trial court may correct the judgment to add prejudgment interest.

---

[12]In his concurring opinion, *infra*, Judge Forrest challenges abuse of discretion as the standard of review of a trial court's decision to grant or deny prejudgment interest, pointing out that *Curtis*, 69 Wn. App. at 20, which we cite for that proposition, fails to provide any analysis, and that no Washington case has held that a trial court has discretion to deny prejudgment interest on a liquidated claim. As was true in *Curtis*, the standard of review has not been raised as an issue in this case. Rather than to delete our reference to *Curtis*, which would render Judge Forrest's concurring opinion moot, we elect to retain our citation and to publish the concurring opinion, leaving for another day the question of whether a trial judge may have discretion, in the appropriate case, to deny prejudgment interest on a liquidated claim. Judge Forrest's concurring opinion may be helpful when the issue is directly before a Washington appellate court. Meanwhile, we observe that the United States Supreme Court recognizes abuse of discretion as the standard of review to be applied. *See, e.g., City of Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, 115 S. Ct. 2091, 2096, 132 L. Ed. 2d 148 (1995).

Termination of the Lease; Postjudgment Relief

Ernst argues that the trial court erred in denying its request to terminate the lease, and in denying its motion for postjudgment relief.

Ernst properly notes that several courts have held that a landlord's breach of a lease provision regarding reasonable consent to sublease or assign entitles the tenant to declare the lease terminated. *See, e.g., Vranas & Assocs., Inc. v. Family Pride Finer Foods, Inc.*, 147 Ill. App. 3d 995, 498 N.E.2d 333 (1986); *Ringwood Assocs., Ltd. v. Jack's of Route 23, Inc.*, 166 N.J. Super. 36, 398 A.2d 1315 (1979); *Halper v. Demeter*, 34 Mass. App. Ct. 299, 610 N.E.2d 332 (1993); Restatement (Second) of Property, *Landlord and Tenant*, at 106 (as a result of the landlord's breach of consent provision, the tenant should have the right to terminate the lease).

■ Assuming Washington were to adopt this view (we do not so hold), Ernst did not seek this relief in its complaint found in the record on appeal. Rather, Ernst assured the landlord that it would remain liable under the lease, and asked in the complaint for declaratory relief allowing it to assign the lease to Value Village. The lease between Ernst and the landlord specifically provides that rent will not be due during the period of time the landlord is in default. Once the landlord tendered consent, albeit belatedly, it was no longer in default, and Ernst became once again liable for the rent. Finally, the landlord accommodated the assignment to Value Village by appealing only the monetary judgment, and by consenting to the assignment in a fashion consistent with language Ernst's attorney placed in the judgment—until the termination of the lease in November 2000. Under these circumstances, the trial court's denial of Ernst's request at trial to

terminate the lease and its denial of the motion for post-judgment relief was not an abuse of discretion.[13]

## Attorney Fees

The landlord argues that the trial court granted Ernst excessive fees because Ernst's own failure to accurately assess the probable length of the trial caused the delay, which in turn caused an exorbitant fee.

■ This court reviews an award of attorney fees and costs for abuse of discretion. *Schmidt v. Cornerstone Invs., Inc.*, 115 Wn.2d 148, 169, 795 P.2d 1143 (1990).

The landlord cites no authority for the proposition that a reasonable fee based on the number of hours needed for preparation and presentation of a case at trial should be altered where one party misjudges the amount of time required for trial. Further, in an affidavit in support of the fee request, counsel for Ernst noted actions by the landlord which caused the trial to be lengthier than originally projected. The trial court believed Ernst, as to the reasonableness of these representations, and the landlord acknowledged that several trial delays resulted from court congestion, something over which neither party had control. The trial court did not abuse its discretion in setting Ernst's reasonable fee. The trial court was in a far better position than we are to assess the effect the error in estimating the length of the trial and the resulting delays may have had on the fees incurred during trial.

## Costs

■ The landlord asserts that the trial court erred in awarding Ernst costs beyond those statutory costs allowed in RCW 4.84.010.

---

[13]Ernst also argues that the three additional months of rent were consequential damages, i.e., that the landlord's default proximately caused the continuing damages. Ruling on this issue would have required the court to make a post-judgment factual finding, which the court declined to do: "Well I don't want to retry this here . . . of course, that we cannot do." Report of Proceedings at 540-41. In any event, the court believed that the landlord's actions did not cause the posttrial delay in Value Village opening its store.

RCW 4.84.010 provides, in relevant part:

> The measure and mode of compensation of attorneys and counselors, shall be left to the agreement . . . of the parties, but there shall be allowed to the prevailing party . . . certain sums by way of indemnity for the prevailing party's expenses in the action, which allowances are termed costs, including, *in addition to costs otherwise authorized by law*, the following expenses . . . .

(Italics added.) The right to costs, generally, is statutory. *See Gerken v. Mutual of Enumclaw Ins. Co*, 74 Wn. App. 220, 231, 872 P.2d 1108, *review denied*, 125 Wn.2d 1005 (1994). However, this is true only in the absence of an agreement concerning costs between the parties. *See Washington Asphalt Co. v. Boyd*, 63 Wn.2d 690, 388 P.2d 965 (1964). Thus, where the parties have entered into an agreement regarding costs, the costs are "otherwise authorized by law." RCW 4.84.010.

Here, the parties bargained for a provision in the lease stating that the prevailing party to any litigation shall receive all costs associated with the litigation. This proviso would be superfluous if interpreted to mean the equivalent of statutory costs. The trial court did not abuse its discretion.

Affirmed in part, reversed in part, and remanded for entry of a modified judgment granting Ernst prejudgment interest. Ernst is awarded its reasonable fees and costs on appeal, in accord with the terms of the lease.

Cox, J., concurs.

FORREST, J.* (concurring) — I concur in the majority's disposition of the case and with the reasoning except for the discussion of prejudgment interest. The Majority, at 487, states the standard of review as follows: "a trial court's award of prejudgment interest is reviewed for

---

*Marshall Forrest is serving as a judge pro tempore for the Court of Appeals, pursuant to CAR 21(c).

abuse of discretion." I disagree. The dispositive issue in this case is whether discretion was necessarily exercised to determine damages, not whether the discretion was abused. If discretion is necessarily exercised by either judge or jury to determine damages, Washington law does not permit prejudgment interest whether or not the discretion may have been abused.[14]

On the other hand, when damages are liquidated,[15] the claimant is entitled to prejudgment interest as a matter of right. The trial court's discretion need not be invoked.[16]

No Washington case has found it necessary to explicitly state that once it has determined that damages are liquidated, the trial court has no discretion to deny prejudgment interest. But the right to prejudgment interest is uniformly treated as following as a matter of law.[17]

I have found no Washington case holding that the trial court has discretion to deny prejudgment interest on a liquidated claim.[18]

[14]*Hansen v. Rothaus*, 107 Wn.2d 468, 472, 730 P.2d 662 (1986); *Rutcosky v. Tracy*, 89 Wn.2d 606, 612, 574 P.2d 382 (1978); *Prier v. Refrigeration Eng'g Co.*, 74 Wn.2d 25, 32, 442 P.2d 621 (1968).

[15]In Washington, prejudgment interest can be awarded only in those cases where the claim is liquidated, meaning where the claim is for a fixed sum or where the evidence provides a basis for computing the recovery with exactness, without reliance on opinion or discretion. *Hansen v. Rothaus*, 107 Wn.2d at 472.

[16]*Hansen*, 107 Wn.2d at 472-73; *Smith v. Olympic Bank*, 103 Wn.2d 418, 425, 693 P.2d 92 (1985).

[17]*See, e.g., Smith v. Olympic Bank*, 103 Wn.2d at 425; *Petersen v. Graham*, 7 Wn.2d 464, 475, 110 P.2d 149 (1941); *Bremerton Concrete Prods. Co. v. Miller*, 49 Wn. App. 806, 812, 745 P.2d 1338 (1987); *Burgeson v. Columbia Producers*, Inc., 60 Wn. App. 363, 368, 803 P.2d 838, *review denied*, 116 Wn.2d 1033 (1991).

[18]At first blush, *In re Stenshoel*, 72 Wn. App. 800, 866 P.2d 635 (1993) might seem to the contrary. *Stenshoel* was a dissolution case where the trial court awarded interest of six percent on certain delayed payments made by one party to the other as part of the overall division of the community property. On appeal, the court held that fixing the interest rate at six percent rather than at the lower statutory rate without giving good reasons therefor constitutes an abuse of discretion. Since a trial court's property division is reviewed for abuse of discretion, I do not find that this holding supports a general proposition that the decision to award prejudgment interest on liquidated claims lies within the discretion of the trial court.

Although the majority unequivocally states that an award of prejudgment interest is reviewed for abuse of discretion, Majority at 487, it is not altogether clear that it actually applied this standard in this case. In correctly holding that Ernst's claim was a liquidated claim, the court makes the following statement: "In the instant case, the trial court was not required to rely on opinion or to exercise discretion to determine Ernst's damages—back rent was readily calculated in accord with the fixed-rent terms of the lease and the period of vacancy prior to trial." Majority at 488. There is a fundamental difference between the exercise of discretion in determining substantive damages and the exercise of discretion in awarding prejudgment interest in addition thereto. As to prejudgment interest, abuse of discretion is a pseudo-issue. If discretion is necessarily exercised to determine damages, prejudgment interest is precluded as a matter of law. *Mall Tool Co. v. Far West Equip. Co.*, 45 Wn.2d 158, 169, 273 P.2d 652 (1954); *Hanson v. Rothaus*, 107 Wn.2d 468. If discretion were abused in calculating damages, a remand would be required to recalculate the damages, not to award or disallow prejudgment interest.

*Curtis v. Security Bank*,[19] relied upon by the majority, is not persuasive. In *Curtis*, the plaintiff was awarded back wages plus prejudgment interest. In affirming, the court unsurprisingly held that the wages were liquidated since the trial court did not need to determine what was reasonable, and that prejudgment interest was therefore appropriate. Although the court enunciated the rule that an award of prejudgment interest is reviewed for abuse of discretion, *Curtis*, 69 Wn. App. at 20, that statement was not necessary to the decision. There was no analysis or discussion of the exercise of discretion, or how it would apply to the allowance of prejudgment interest. Rather, the court merely cited *Pannell v. Food Servs. of Am.*, 61 Wn.

---

[19] 69 Wn. App. 12, 847 P.2d 507, *review denied*, 121 Wn.2d 1031 (1993).

494

App. 418, 810 P.2d 952 (1991), *review denied*, 118 Wn.2d 1008 (1992).

In *Pannell* the jury was instructed to find the reasonable value of the wages, bonus and benefits lost. Applying well-established rules as to what constitutes liquidated damages, *e.g.*, *Hanson v. Rothaus*, 107 Wn.2d 468, the court held that the damages were not liquidated and hence prejudgment interest was not available as a remedy. Although this holding was dispositive as to the prejudgment interest issue, the opinion went on to make the following statement:

> Under these circumstances, the trial court's denial of prejudgment interest is in accordance with Washington law. Since the federal law also permits the exercise of discretion, especially where the amount of the recovery is not readily ascertainable and, therefore uncertain, there is no basis for finding an abuse of discretion by the trial court in denying prejudgment interest.

*Pannell*, 61 Wn. App. at 449.

As in *Curtis*, there is no analysis or discussion in *Pannell* of the circumstances in which the trial court could properly exercise discretion in awarding prejudgment interest or what factors should guide such exercise. Under *Hanson*, clearly the court had no discretion to award prejudgment interest where the damages are not liquidated. If the damages are liquidated, I see no reason, and no Washington court has given any reason, that we should treat some claimants differently by awarding prejudgment interest on liquidated damages and failing to award prejudgment interest to other claimants with liquidated damages.

In my view, this court should explicitly reject the abuse of discretion standard for review of prejudgment interest awards for which there is no sound basis in Washington law and simply reverse the trial court for an error of law in failing to award prejudgment interest on Ernst's claim for back rent which is clearly liquidated.