[No. 51276-5-I. Division One. September 2, 2003.]

JEANANNE AGUIRRE, *Individually and on Behalf of All the Members of the Class of Persons Similarly Situated, Respondent*, v. AT&T WIRELESS SERVICES, INC., *Appellant*.

*Kelly T. Noonan, Michael P. McGinn,* and *Carl J. Marquardt* (of *Stokes Lawrence, P.S.*), for appellant.

*David E. Breskin* and *Daniel F. Johnson* (of *Short Cressman & Burgess*), for respondent.

COLEMAN, J. — AT&T Wireless Services, Inc. appeals an order awarding postjudgment interest to Jeananne

Aguirre. Aguirre filed a class action lawsuit against AT&T. The trial court approved a settlement in which AT&T agreed to pay Aguirre's attorney fees in the event that the settlement survived any appeals. A third party appealed the settlement. Two years later, after termination of the appeal but before the expiration of the time for seeking further review, Aguirre moved for postjudgment interest. The trial court granted the motion, awarding interest from the date of its order approving the settlement. We reverse because the parties' settlement agreement provided that AT&T's obligation to pay was contingent on the exhaustion of any appeals. Accordingly, no interest accrued on the attorney fee award until that point.

## FACTS

On March 25, 1998, Aguirre filed a class action lawsuit against AT&T, alleging that the company charged some of its customers with local taxes that they did not owe. Aguirre and AT&T signed a settlement agreement in February 2000. AT&T agreed to provide customers who had paid the improper taxes with coupons toward telephone accessories. AT&T also agreed to pay Aguirre's attorney fees, up to $1,411,146. Because a third party was also suing AT&T and settling with Aguirre would affect her case, the settlement provided that AT&T would not disburse coupons and attorney fees until the conclusion of all appeals.[1] Section 5.2 of the settlement reads:

> [AT&T] shall have no obligation to pay any of Plaintiff's attorneys' fees and expenses unless and until this settlement becomes Final, as defined in Section 2.9 herein. Within ten days of the Effective Date, Defendants will pay the attorneys'

---

[1] The third party, Kathleen Sanders, represented a class of plaintiffs from Clark County. Aguirre was the class representative in a parallel suit filed in King County, representing a statewide class. Sanders opted out of the statewide class, then sought to intervene in Aguirre's lawsuit in order to object to the settlement. The trial court denied her motion to intervene and approved the settlement. Sanders appealed to this court, and we affirmed. *See Aguirre v. AT&T Wireless Servs.*, 109 Wn. App. 80, 33 P.3d 1110 (2001).

fees and expenses, provided for in Section 5.1, to Plaintiff's Counsel.

The agreement defines the "Effective Date" as "the first date by which all the events and conditions specified in Section 8 of this Agreement have been met and occur." Section 8.1 sets forth six "events" that must occur before the agreement becomes effective. The two final triggering events are:

(e) the Court has entered the Final Judgment substantially in the form [provided in the agreement].

(f) the Final Judgment has become "Final" as defined in Section 2.9.

The definition of "Final" does not appear in Section 2.9, however. That section instead contains the definition for the term "Final Judgment," which is defined as "the Final Judgment and Order of Dismissal of the action provided for in Section 9 below." The definition of "Final" appears directly above the definition of "Final Judgment," in Section 2.8. The record indicates that the definition of "Final" was originally contained in Section 2.9, but the parties renumbered the sections in a later draft without changing the reference in the attorney fee provision. Section 2.8 defines the term "Final" as

the later of: (a) the date of final affirmance or the expiration of the time for a petition for a writ of *certiorari* and if *certiorari* is granted the date of final review and decision pursuant to that grant; (b) the date of final dismissal of any appeal or petition for review or decision on review by the Washington Supreme Court, or any final dismissal of any proceeding on *certiorari*; or (c) if no appeal is filed, the expiration date for the filing of notice of any appeal from the Court's judgment approving the settlement and entry of the Final Judgment.

As specified in the agreement, the court entered the "Final Judgment" approving the settlement and dismissing the case. Two years later, Aguirre filed a motion for an award of postjudgment interest, calculated from the date the court entered the "Final Judgment." Because the ap-

pealing party still had the opportunity to seek a writ of certiorari with the United States Supreme Court, Aguirre had not yet received the coupons and attorney fees. The trial court granted the motion for postjudgment interest on the attorney fee award.

AT&T moved for reconsideration, arguing that the interest award conflicted with the parties' agreement that the settlement would not become effective until any appeals had been exhausted. The trial court denied the motion, stating that the definition of "Final" in Section 2.8 was irrelevant since the attorney fee provision referred to Section 2.9. The court therefore concluded that the court's order approving the settlement triggered AT&T's obligation to pay attorney fees. While the court acknowledged that AT&T might have intended to define "Final" in Section 2.8, the court ruled that the language of the attorney fees section, which refers to Section 2.9, was controlling. AT&T appealed the interest award to this court.

## STANDARD OF REVIEW

■■ This case presents issues of statutory interpretation and construction of a settlement agreement. These are both questions of law, which we review de novo. *Tyrrell v. Farmers Ins. Co. of Wash.*, 140 Wn.2d 129, 132-33, 994 P.2d 833 (2000).

## DISCUSSION

■■ AT&T argues that the trial court erred in awarding postjudgment interest because Aguirre did not have the right to the settlement proceeds until all appeals had been exhausted or the time period for seeking review had expired. We agree. The agreement provided that the settlement would not become effective and AT&T would have no obligation to pay the attorney fees until all appeals were exhausted. The trial court's "Final Judgment" merely approved the terms of that settlement and commenced the appeal period. Accordingly, statutory interest did not accrue

until Aguirre had the right to use of the funds, i.e., at the termination of appellate review.

The purpose of awarding interest on a judgment is to compensate a party having the right to use money when it has been denied use of that money. *Ernst Home Ctr., Inc. v. Sato*, 80 Wn. App. 473, 488, 910 P.2d 486 (1996) (citing *Hansen v. Rothaus*, 107 Wn.2d 468, 473, 730 P.2d 662 (1986)). Accordingly, interest generally accrues on judgments from the date at which the judgment is entered. RCW 4.56.110(3) ("judgments shall bear interest from the date of entry . . .").

But where a party's right to recover on a judgment does not arise until a future contingency occurs, courts have held that postjudgment interest accrues from the date the party has a right to collect the funds. *In re Marriage of Young*, 44 Wn. App. 533, 536, 723 P.2d 12 (1986); *Herzog v. Herzog*, 23 Wn.2d 382, 161 P.2d 142 (1945). In *Young*, the court held that a husband who received a lien on the family home, which he could execute only if certain contingencies occurred, was not entitled to postjudgment interest until his right to enforce the lien arose. *Young*, 44 Wn. App. at 536. The same reasoning also applies to monthly support payments—interest accrues from the date each payment is due, not from the date of the judgment creating the monthly obligation. *See Herzog*, 23 Wn.2d at 387; *Swanson v. Graham*, 27 Wn.2d 590, 597, 179 P.2d 288 (1947).

This case involves a settlement agreement between two parties in a civil dispute. Where a court's judgment enforces a settlement agreement, the court does not have the authority to impose obligations to which the parties themselves did not agree. *Evans v. Jeff D.*, 475 U.S. 717, 726-27, 106 S. Ct. 1531, 89 L. Ed. 2d 747 (1986). We therefore look to the terms of the settlement agreement to determine when Aguirre's right to the settlement proceeds arose and postjudgment interest began to accrue.

Under the agreement, the settlement did not become effective and AT&T had no obligation to pay unless and until the settlement was upheld on appeal or the time

period for filing appeals expired. The agreement states that its "effectiveness . . . shall be conditioned on the occurrence of" a number of events, including that the court had entered a "Final Judgment" *and* that the "Final Judgment" had become "Final." These two distinct requirements make sense in the context of this particular settlement, since it was necessary in these circumstances for the parties to have a final, appealable judgment in order to commence the appeal process. Accordingly, the agreement defines "Final" as the point when any appeals had been exhausted and the time period for seeking further review had run out. Thus, one scrivener's error notwithstanding,[2] it is clear from the agreement, when read in its entirety and in the context in which it was drafted, that the parties knew the settlement could become effective only if it survived on appeal.

Aguirre concedes that she was not entitled to the settlement benefits or attorney fees until the exhaustion of appeals. She argues, however, that once the court entered the judgment, the delayed payment was analogous to a stay pending appeal. She argues that although she agreed that AT&T would not have to pay until a future date, she is still entitled to interest because she lost the use of the attorney fee award pending the third party's appeals.

But the parties' agreement does not establish an obligation with a deferred payment date. Rather, the agreement clearly states that the settlement is not effective until it

---

[2] In denying reconsideration, the trial court ruled that because the attorney fee provision stated that the term "Final" was defined in Section 2.9, and because Section 2.9 contained the definition of "Final Judgment," the agreement provided for payment upon entry of the court's order approving the settlement. But it is obvious from the context of the agreement and its drafting history that the attorney fee provision was meant to refer to the definition of "Final" contained in Section 2.8. Aguirre has never argued that she was misled by the misnumbering, nor has she asserted that payment was due at "Final Judgment." In fact, when a third party sought to intervene, Aguirre argued that the third party's appeal should be dismissed, in part because the appeal would prevent the settlement from becoming final and would therefore delay her recovery of attorney fees. She continues to concede on appeal that under the agreement she was not to be paid until all appeals had run. Thus, the trial court's conclusion to the contrary—based on an obvious scrivener's error—is not supported by the parties' conduct or by the agreement when read as a whole. *See Berg v. Hudesman*, 115 Wn.2d 657, 801 P.2d 222 (1990).

survives any legal challenges. No obligation exists under the agreement until that contingency occurs.

AT&T therefore presents an even more compelling argument against awarding postjudgment interest than that presented in *Young*. That case involved a divorce decree that gave the husband a lien on the family home that would be paid either (1) when the house was sold, (2) after the youngest child became self-supporting, (3) when the wife and children no longer lived in the home, or (4) if there was a foreclosure action against the wife. Under those facts, the court held that "a decree that imposes a lien on property incident to an equitable division of property, but defers the obligation to pay until a later date, does not become a judgment for purposes of RCW 4.56.110, at least until the obligation to pay arises." *Young*, 44 Wn. App. at 537. At least one commentator has criticized *Young* for focusing on when a debt was due rather than when it arose. *See* 20 KENNETH W. WEBER, WASHINGTON PRACTICE: FAMILY AND COMMUNITY PROPERTY LAW § 32.27, at 207 (1997). But even if we were to agree with that criticism of *Young*, it would not change our conclusion in this case because here AT&T's obligation to pay did not even come into existence until the exhaustion of any appeals. Thus, the "Final Judgment" approving the settlement did "not become a judgment for purposes of RCW 4.56.110" until the obligation to pay arose. *Young*, 44 Wn. App. at 537.

Aguirre cites *State v. Claypool*, 111 Wn. App. 473, 475, 45 P.3d 609 (2002), for the proposition that RCW 4.56.110 requires that interest accrue from the date of judgment, even where the judgment purports to delay the obligation until a future date. *Claypool* is distinguishable, however, and does not require an interest award in this case. In *Claypool*, a criminal defendant pleaded guilty to second degree assault as part of a plea agreement, and the court ordered the defendant to pay restitution. The plea agreement was silent regarding when interest would begin to accrue on the judgment or when the defendant's obligation to pay the debt would arise. The trial court, over the State's

objection, ordered that interest would be deferred on the restitution until after the defendant was released from custody. *Claypool*, 111 Wn. App. at 475. This court reversed, holding that RCW 10.82.090, a criminal provision with language similar to RCW 4.56.110, unambiguously requires interest to accrue from entry of judgment.[3] *Claypool*, 111 Wn. App. at 476. The court distinguished *Young*:

> There, the court determined a lien that did not come due until the occurrence of a future event was not a judgment until the duty to pay arose. [*Young*] at 537. Thus, the issue was whether Mr. Young's lien was a judgment. Here, there is no dispute that Mr. Claypool's financial obligations arise under the judgment against him. And there is no future occurrence that triggers his obligation to pay. *Young* is not then applicable.

*Claypool*, 111 Wn. App. at 476. Since Claypool's obligation to pay the judgment arose upon entry of the judgment, there was no basis to defer postjudgment interest. *Claypool*, 111 Wn. App. at 476. Here, on the other hand, AT&T's obligation to pay did not arise until a future contingency occurred. Moreover, that contingent obligation was the result of the party's agreement, whereas in *Claypool*, the court's attempt to alleviate the effect of the restitution order by deferring interest until a later date was not supported by any language in the plea agreement. Our holding, therefore, is not inconsistent with *Claypool*.

Aguirre's reliance on *Kitsap County Bank v. Lewis*, 24 Wn. App. 757, 603 P.2d 855 (1979), is also misplaced. In that case, the trial court entered an order awarding the plaintiff a judgment on five promissory notes "as set forth in the Complaint." *Lewis*, 24 Wn. App. at 759. The plaintiff bank argued that this language entitled it to postjudgment interest at the rate specified in the promissory notes. The court disagreed, holding that because the judgment did not specify the rate of interest, the statutory rate applied. *Lewis*, 24 Wn. App. at 758. The court noted that "[i]f the

---

[3] The relevant portion of RCW 10.82.090 provides, "Financial obligations imposed in a judgment shall bear interest from the date of the judgment until payment, at the rate applicable to civil judgments."

intent of the drafter of the judgment was to obtain 10 percent interest for his client, the document should have specifically so stated." *Lewis*, 24 Wn. App. at 760. Likewise, Aguirre argues, if AT&T had wished to avoid postjudgment interest until a later date, it should have specifically addressed that in the settlement.

But in *Lewis*, the court was construing RCW 4.56.110(1), which addresses the circumstances in which a party may recover interest at a rate specified in an underlying contract. That portion of the statute specifically provides that the contractual interest rate applies only where "said interest rate is set forth in the judgment." RCW 4.56.110(1). *Lewis* did not address the issue presented here, which is *when* postjudgment interest should begin to accrue under RCW 4.56.110(3). Although the parties could have specified in the agreement that interest would not accrue until AT&T's obligation to pay arose, it was not necessary to do so because the agreement made AT&T's obligation to pay contingent on the exhaustion of any third-party appeals. There was no reason for AT&T to suspect that Aguirre would seek interest on money before she had any right to it.

## CONCLUSION

We hold that where, as here, the parties to a settlement agreement condition the agreement's effectiveness on a future contingency, postjudgment interest does not begin to accrue until that future contingency occurs. Under the agreement between the parties in this case, Aguirre had no right to the settlement proceeds until any third-party appeals were exhausted and the time period for seeking further review expired. That point had not yet occurred when Aguirre sought interest on the attorney fee award. We therefore reverse the trial court's award of postjudgment interest.

BECKER, C.J., and BAKER, J., concur.

Review denied at 151 Wn.2d 1028 (2004).