LEONARD, STREET AND DEINARD, Respondent,

v.

MARQUETTE ASSOCIATES, Appellant.

No. C1–84–548.

Court of Appeals of Minnesota.

Aug. 14, 1984.

Leonard, Street and Deinard, pro se.

Allen I. Saeks, Minneapolis, for respondent.

Steven K. Champlin, Dorsey & Whitney, Minneapolis, for appellant.

Heard, considered, and decided by SEDGWICK, P.J., and RANDALL and NIERENGARTEN, JJ.

## OPINION

SEDGWICK, Judge.

Leonard, Street and Deinard, tenants of the National City Bank Building in Minneapolis, sought a judgment declaring that their landlord, Marquette Associates, could not refuse consent to an assignment of their lease to the National City Bank. The trial court granted the relief, and the landlord appealed. We granted respondent's motion for expedited review. We reverse.

## FACTS

In March 1975, Leonard, Street and Deinard ("tenants") entered into a fifteen-year lease for the twelfth floor of the National City Bank Building. The lease had been negotiated over a period of many months, and both sides were highly experienced in drafting commercial leases. The lease provides that tenants are to use the space "for the purposes of practicing law and for purposes incidental thereto and for no other purpose whatsoever." A rider to the lease provides that tenants shall locate their law library within the space and shall permit any other lawyer tenants of the building to use the library. The rider was added so that these tenants could obtain a somewhat reduced overall average rent per square foot for the leased premises without visibly disrupting the uniform "rental rate schedule" which the landlord quoted to other prospective tenants.

The lease also contains an "Assignment and Subletting" clause which provides:

Lessee shall have the right to assign this lease or sublet all or any part of the Leased Premises with the written consent of the Lessor, which consent shall not be unreasonably withheld, provided: (i) the Lessor shall not be required to consent to an assignment or to a sublease to any tenant whose occupancy would be inconsistent with the character of the Building; (ii) such assignment or sublease shall not relieve Lessee of any of its obligations under this lease; and (iii) any profit received from such assignment or sublease shall promptly, upon

receipt thereof, be paid by the Lessee to the Lessor.

In 1977, tenants entered into another lease with the landlord for part of the eleventh floor, and thereafter periodically took over more space on that floor, each time using the same lease form. By 1983, tenants needed more space, but no more contiguous space was available. Tenants told the landlord they might have to move, and offered their leased premises back to the landlord so that it could re-rent them at market rate, but the landlord refused.

After this refusal, tenants entered into a letter of intent with National City Bank, which already occupied the main floor and several other floors of the building, to assign or sublet tenants' twelfth floor premises to it. Little or no remodeling would be required; tenants agreed to remain liable on the lease and would make no profit on the assignment. The landlord refused to consent to this arrangement unless the bank used the premises for the practice of law and maintained a law library within the premises.

Tenants' law library was never used by any other law firm, and landlord did not obtain any other law firm tenants for the building who relied upon the prospective use of the library. Before tenants entered into their agreement with the bank, the landlord offered the premises to the bank at a rental greater than that being paid by tenants. The offer was not contingent upon the space being used for the practice of law or upon maintaining a law library.

The trial court found that, by offering the space to the bank, the landlord waived any right it might have had to refuse consent to the proposed sublet or assignment to the bank. It also found that the lease rider relating to the maintenance of a law library and the requirement that the premises be used exclusively for the practice of law were personal to tenants and were not binding upon any subtenant or assignees, and that the bank and its proposed use of the space were not inconsistent with the general character of the building. The trial court concluded that the landlord could

not refuse consent to the assignment to the bank.

## ISSUES

I. May tenants assign or sublet their premises to a subtenant who would not comply with the specific "use clause" in the lease?

II. Did the landlord, by offering the leased premises to tenants' proposed subtenant at a rate exceeding that at which tenants offered to sublet, waive its right to refuse to consent to the proposed subletting or assignment to that proposed subtenant?

## ANALYSIS

### I

■ The assignment clause of tenants' lease provides:

Lessee shall have the right to assign this lease or sublet all or any part of the Leased Premises with the written consent of the Lessor, which consent shall not be unreasonably withheld, provided: (i) the Lessor shall not be required to consent to an assignment or to a sublease to any tenant whose occupancy would be inconsistent with the character of the Building; (ii) such assignment or sublease shall not relieve Lessee of any of its obligations under this lease; and (iii) any profit received from such assignment or sublease shall promptly, upon receipt thereof, be paid by Lessee to the Lessor.

There is no argument over provisos (i) and (iii) of the clause. The landlord has conceded that the bank's occupancy is not inconsistent with the character of the building and that tenants will not receive any profit from the proposed sublease. The question before this court is the interpretation of proviso (ii): "such assignment or sublease shall not relieve Lessee of any of its obligations under this lease." If that condition is not met, then the landlord is not required to consent to the assignment of the lease, even if the failure to consent is unreasonable.

All of tenants' arguments in support of the trial court's decision are arguments that the landlord's refusal to consent was unreasonable. However, the sublet and assignment clause of the lease states that the landlord's "consent shall not be unreasonably withheld, *provided*" the subtenant's occupancy is not inconsistent with the care of the building, the assignment or sublease does not relieve lessee of any of its obligations under the lease, and any profit is turned over to the landlord (emphasis added). The landlord's duty to act reasonably does not arise until the three provisos of the sublet and assignment clause have been met.

■ The question is whether the restrictive use clause and the law library rider are included among tenants' "obligations" under the lease. If they are, the landlord need not consent to the assignment if the subtenant or assignee will not assume them. If they are not, the landlord may not unreasonably withhold consent to the assignment. Tenants contend that the restrictive use provision and the law library rider are "personal to the primary tenant" and thus need not be assumed by any subtenant. We do not agree. The restrictive use provision and the law library rider are obligations under the lease which must be assumed by any subtenant or assignee before the landlord is obligated to consent to the assignment of the lease.

The assignment and sublet clause requires that any "assignment or sublease shall not relieve Lessee of *any* of its obligations under this lease" (emphasis added). It makes no distinction between "personal" obligations and obligations which run with the lease. The lease itself, in describing the various obligations of tenants, makes no distinction between obligations which are "personal" to tenants and obligations which subtenants must assume. If the trial court and tenants are correct in finding the restrictive use provision and the law library requirement to be "personal" obligations of tenants, how are the courts, or the parties themselves, to know which of the obligations of a lease might later be declared "personal?" Creating such a distinction would breed litigation, as parties to leases seek to have one or another clause in the contract declared "personal" to the primary tenant and thus void after assignment.

■ Our decision is consistent with the rule that an assignee has no greater rights than the assignor. *See, e.g., Twin Ports Oil Co. v. Whiteside*, 218 Minn. 78, 15 N.W.2d 125, 126 (1944). Tenants, under their lease, have no right to use the premises for anything other than to practice law. They cannot assign to their proposed subtenant a right they themselves do not possess. The Minnesota Supreme Court has long applied this principle to rights under a lease. In *Spalding Hotel Co. v. Emerson*, 69 Minn. 292, 72 N.W. 119 (1897), a lessor sought a permanent injunction restraining the lessee's receiver from permitting rooms in a hotel to be used for any purpose other than a hotel. In ruling for the lessor, the Supreme Court found that the use provision of the lease restricted the premises to use as a hotel, and stated:

> [A] lessor may ... prevent the lessee, *or those claiming or holding under him*, from converting the demised premises to uses inconsistent with the terms of the contract (emphasis added).

*Id.*, at 296, 72 N.W. at 120–21. The cases cited by tenants were interpreting leases with sublet and assignment clauses different from the one in this case. In *Ridgefield Investors, Inc. v. Mae Ellen, Inc.*, 57 So.2d 842 (Fla.1952), for example, the lease contained a restrictive use clause. The sublet and assignment clause, however, did not require any subtenant to assume all obligations of the lease; it merely required that any subtenant not conduct a business which competed with the business of other tenants in the building. The sublet and assignment clause being construed in *Fair West Building Corp. v. Trice Floor Coverings, Inc.*, 394 S.W.2d 707 (Tex.Civ.App. 1965) similarly did not include a provision that any subtenant must agree to assume all obligations of the lease. In *Rosen v. Wolff*, 152 Ga. 578, 110 S.E. 877 (1922),

however, the sublet and assignment clause did contain a provision similar to the provision at issue here. In that case, the Georgia Supreme Court ruled that a restrictive use clause was binding upon the subtenant. Tenants argue, in their brief, that *Rosen* is distinguishable because the sublet clause permitted the landlord to refuse consent to a proposed sublet irrespective of whether or not that consent was being reasonably withheld. However, as we stated earlier, under tenants' lease the landlord may withhold consent to a proposed sublet whether unreasonably or not unless and until tenants can show the three requirements imposed by the sublet and assignment clause have been met. *Rosen* is thus not distinguishable. Because the lease in this case provides that tenants have a qualified right to assign, provided, among other things, "such assignment ... shall not relieve lessee of any of its obligations" under the lease, the landlord is not required to consent to this proposed assignment unless the proposed subtenant agrees to comply with the restrictive use provision and the requirement that a law library be maintained on the premises.

## II

 The trial court concluded that, by offering the bank tenants' premises at a higher rate than tenants were paying, the landlord waived any right it may have had to refuse consent to the proposed subletting or assignment to the bank, since that offer constituted an acceptance of the bank as a qualified subtenant. However, under the landlord's offer, the bank would not be bound by tenants' restrictive use provision or obligated to maintain a law library for the use of other building occupants. Simply because the bank would have been satisfactory to the landlord under other conditions than those in tenants' lease does not constitute waiver of the landlord's unambiguous right to refuse consent to an assignment of the lease.

## DECISION

A landlord is not required to consent to a proposed assignment in which the subtenant would not comply with the restrictive use provision under the lease. The landlord did not waive its right to refuse to consent to the proposed assignment.

Reversed.