Argued and submitted December 5, 1997, affirmed November 4, 1998

## LAMONTS APPAREL, INC.,
a Delaware corporation,
*Appellant,*

*v.*

## SI-LLOYD ASSOCIATES,
a limited partnership,
*Respondent.*

(9411-07588; CA A91907)

967 P2d 905

Albert J. Bannon argued the cause for appellant. With him on the briefs were Patty T. Rissberger and Farleigh, Wada & Witt, P.C.

Barnes H. Ellis argued the cause for respondent. With him on the brief were Charles F. Adams, Katherine A. McDowell and Stoel Rives LLP.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

## WARREN, P. J.

This case involves a dispute arising from plaintiff's attempts to assign or sublet retail space that it leased from defendant in the Lloyd Center in Portland. The jury found that defendant breached the lease by unreasonably refusing to consent to plaintiff's proposed arrangements and awarded plaintiff damages. The court thereafter granted defendant's motion for judgment notwithstanding the verdict on the ground that the proposed arrangements did not substantially comply with the existing lease and, thus, defendant had no obligation to be reasonable in deciding whether to accept them. Plaintiff appeals, and we affirm.

In 1990, plaintiff, a clothing store chain, and defendant entered into a 20-year lease of 47,000 square feet, spread over two floors, in the Lloyd Center. The lease required plaintiff to operate "a department store-type business." It imposed the following restrictions on assigning the lease or subletting the space:

> "Tenant shall not assign this Lease, nor sublet in excess of twenty percent (20%) of the selling area of the leased premises without the written consent of Landlord, which consent shall not be unreasonably withheld; and in case of any such assignment or subletting, Tenant shall nevertheless remain fully liable as surety to Landlord for the full payment of the minimum rent, taxes, assessments, insurance premiums, and other additional rent according to the terms hereof[.]"

By spring 1994, plaintiff was experiencing financial difficulties and decided to close its Lloyd Center store. Because the lease did not contain a termination provision, plaintiff faced a significant liability unless it could assign the lease or sublet the space. Plaintiff notified M. S. Simon, defendant's general partner, of its decision to close the store and sought its assistance in locating subtenants.[1] Beginning

---

[1] At this time, Simon and Heitmann, the representative of defendant's limited partners, were engaged in various disputes that in fall 1994 resulted in Heitmann becoming the general partner. Plaintiff emphasizes that Heitmann, not Simon, rejected the proposed subleases. That fact does not affect our analysis.

in April, they negotiated with Future Shop, a consumer electronics business, and Pacific Linen, which sold bedding, mattresses, white goods, and similar items. Each business proposed to take over one of the floors of plaintiff's existing store. In July, plaintiff and Simon agreed on what they described as proposed subleases with the two businesses. The terms of the proposed subleases differed from the lease between plaintiff and defendant in a number of respects, including that each new tenant would be responsible for rent only on the floor that it leased, the lease requirement of "department store-type" use would be modified, the percentage rent provision for Future Shop would be changed for that store's benefit, and plaintiff would be released from any further liability under the lease.

All parties understood that Heitmann, the representative of defendant's limited partners, had to approve any assignment or sublease. Heitmann first raised some questions and sought additional information. Heitmann then, in September 1994, refused to approve, and the proposed transaction fell apart. Plaintiff filed this action in November; it closed the Lloyd Center store in January 1995.[2]

The heart of plaintiff's claim is that it was commercially unreasonable, and thus a violation of the lease, for defendant to reject the proposed subleases. Defendant moved for a directed verdict on the ground that the "subleases" actually involved the creation of new leases rather than substituting one party for another in an existing lease. Defendant, therefore, had no duty to act reasonably in deciding whether to approve them. The trial court denied the motion. After the verdict, defendant moved for a judgment notwithstanding the verdict on the same ground. In the interim, the trial judge had become ill; a different judge heard the motion and granted it. Plaintiff appeals from the resulting judgment.

■ We first consider whether the motion for judgment notwithstanding the verdict (JNOV) was timely filed; if it was not, plaintiff is entitled to reinstatement of the judgment on the jury verdict. The motion was due on December 4, 1995;

---

[2] Plaintiff filed a Chapter 11 bankruptcy proceeding around the same time. According to the parties, the outcome of this case will control the claim that defendant filed in the bankruptcy court for damages for termination of the lease.

the certificate of service is dated that day, but the clerk's office stamp indicates that the motion was received on December 5, 1995. When it learned of the discrepancy, defendant filed a motion under ORCP 71 A to correct the record to show that the true filing date was December 4. The trial court, after a hearing, granted the motion. In a previous opinion, we determined that the judge who heard the motion should have recused himself because of his *ex parte* contacts with an employee of the clerk's office. We therefore vacated the decision and remanded for a new decision by a different judge. *Lamonts Apparel, Inc. v. SI-Lloyd Associates*, 153 Or App 227, 956 P2d 1024 (1998).

On remand, the new judge held a new evidentiary hearing that included material that went significantly beyond what the parties had presented at the first hearing. Based on that evidence, the court found that defendant filed the motion on or about 5:00 p.m. on December 4, 1995, that the doors to the clerk's office are open and the lights on after 5:00 p.m., and that documents left after 5:00 p.m. but not retrieved until the next morning will be stamped with the next day's date.[3] It therefore granted the motion to correct the record. The evidence also shows that the supervisor in the clerk's office does not consider the office to be closed precisely at 5:00 p.m. and will at times pick up and date filings received after that time. We have carefully examined the record but do not believe it necessary to discuss it in detail. We affirm the order granting the motion to correct the record. The JNOV motion was timely.

■ We turn to the merits of the motion. Plaintiff's arguments focus on whether it was reasonable for defendant to refuse the proposed subleases. As the trial court recognized when ruling on the JNOV motion, however, the crucial issue comes before one even reaches the issue of reasonableness:

> "[T]he Court is going to conclude that in the assigning of a master lease, if the assignment does not substantially comply with the master lease, the person with the right to consent to the assignment does not have to consent if it does

---

[3] At the times involved, the Multnomah County Clerk's office permitted the filing of nonfee papers by simply dropping them through a slot without communicating with any employee.

"not substantially comply, and therefore you don't get to the question of whether the withholding of the consent was unreasonable[.]"

The essential difficulty with plaintiff's position is that plaintiff did not present defendant with either a sublease or an assignment. Rather, it presented defendant with new leases with substantially different terms from the one between it and defendant. Nothing in the original lease required defendant to act reasonably in deciding whether to accept new leases with new tenants when new material terms were proposed.

An "assignment" of a lease is a conveyance of the lessee's entire interest in the demised premises, while a "sublease" conveys only a part of the term, with the original lessee retaining some reversionary interest. *See, e.g., Neal v. Craig Brown, Inc.*, 86 NC App 157, 356 SE2d 912, 915 (1987); *see also* 49 Am Jur 2d 846-49, *Landlord and Tenant* § 1077. An assignment is the outright transfer of all or part of an existing lease, so that the assignee steps into the shoes of the assignor; a sublease involves the creation of a new tenancy between the sublessor (the original lessee) and the sublessee. *See Jaber v. Miller*, 219 Ark 59, 239 SW2d 760, 761 (1951). In either case, what the original lessee conveys is part or all of the lessee's interest in the *existing* lease. Covenants in the existing lease that run with the land are binding on the assignee, *Abbott v. Bob's U-Drive et al*, 222 Or 147, 158, 352 P2d 598 (1960), while in a sublease the original lessee remains liable to the lessor for payment of rent and the performance of the other covenants of the lease. 49 Am Jur 2d 914, *Landlord and Tenant* § 1176. An arrangement that substantially modifies the existing lease, thus, cannot be either an assignment or a sublease.

In *Leonard, Street & Deinard v. Marquette Assoc.*, 353 NW2d 198 (Minn App 1984), on which defendant relies, the plaintiff, a law firm, assigned its lease in an office building to a bank. The lease permitted the plaintiff to assign it with the defendant landlord's consent, which would not be unreasonably withheld, provided, among other things, that the assignment did not relieve the plaintiff of any of its obligations under the lease. The landlord refused to consent to

the assignment, arguing that the bank's use would not comply with the lease conditions that the space be used as a law office and that there be a law library that other lawyer-tenants of the building could use.

The plaintiff sought a declaratory judgment that the defendant had to consent, arguing that its refusal to do so was unreasonable. The court did not reach the issue of reasonableness, however, because it held that the duty to act reasonably did not arise until the plaintiff complied with the terms of the assignment clause, which it had not done. The plaintiff's right to use the premises was limited to the practice of law. It could not assign to a proposed new tenant a right—to use the premises for another purpose—that it did not itself possess. 353 NW2d at 201.

> "Because the lease in this case provides that tenants have a qualified right to assign, provided, among other things, 'such assignment . . . shall not relieve lessee of any of its obligations' under the lease, the landlord is not required to consent to this proposed assignment unless the proposed subtenant agrees to comply with the restrictive use provision and the requirement that a law library be maintained on the premises." *Id.* at 202.

Although the Minnesota court relied in part on specific terms of the assignment clause in the lease, its reasoning applies to this case. The essential point is that the landlord's duty to act reasonably arises only when the tenant produces a true assignment or sublease and that that requires at least substantial conformity with the existing lease.[4] Here the proposed "subleases" were different from the existing lease in a number of significant respects, including the use that the "sublessees" could make of the property[5] and the percentage

---

[4] This does not, of course, exclude negotiations between a lessor and lessee over consent for an assignment or sublease. For example, a lessor might seek concessions in return for its consent if it reasonably believed that modifications to the existing lease were necessary to make it reasonable for it to consent. *See, e.g., Chiles v. Robertson,* 94 Or App 604, 628-32, 767 P2d 903, *on recons* 96 Or App 658, 774 P2d 500, *rev den* 308 Or 592 (1989). In the same way, a lessor might be willing to make adjustments to the underlying lease at the lessee's request. This case is not about such voluntary modifications.

[5] Plaintiff insists that the proposed tenants would actually have conducted "department-store type" businesses. What matters, however, is that the proposed subleases would have involved modifying the relevant provision to permit uses that the original lease did not allow.

rent that one would pay. The provision releasing plaintiff from any liability for rent is itself inconsistent with the basic nature of a sublease, in which the original lessee remains fully liable on the existing lease and in that capacity is the sublessor to the sublessee.[6] It is also inconsistent with the express terms of the assignment clause of the lease. As a matter of law, plaintiff never presented defendant with a proposal that satisfied the basic requirements of an assignment or a sublease or that substantially complied with the requirements of the existing lease. Thus, defendant's duty under the lease to act reasonably never arose, and defendant did not breach the lease by refusing to consent. The trial court correctly granted judgment to defendant.

Plaintiff also appeals from supplemental judgments awarding attorney fees to defendant. We find no abuse of discretion and affirm those judgments without further comment.

Affirmed.

---

[6] Even if, as plaintiff states, the release from liability for rent was Simon's suggestion, it remains the case that the release would have constituted a substantial change in the existing lease.